Yeary, J., delivered the opinion of the Court in which Keller, P.J., and Keasler, Hervey, Alcala and Keel, JJ., joined.
Appellant was convicted of aggravated assault with a deadly weapon. TEX. PENAL CODE § 22.01(a)(2). The Court of Appeals held the evidence to be legally insufficient to establish the deadly-weapon element of the offense, reformed the judgment to reflect a conviction for the lesser-included offense of simple assault, and remanded for a new punishment hearing. Hernandez v. State , No. 06-15-00167-CR, 2016 WL 4256938, at *15 (Tex. App.-Texarkana 2016). We reverse the opinion of the court of appeals and reinstate the trial court's *311 judgment of conviction for aggravated assault with a deadly weapon.
I. BACKGROUND
Facts and Procedural Posture
Appellant and Melanie Molien had been involved in a volatile dating relationship for approximately two years. The relationship had recently ended, and Molien moved into a separate residence. In the early morning hours of March 21, 2014, the two exchanged several text messages in which Appellant accused Molien of being unfaithful to him. Appellant went to Molien's duplex around 3 a.m., she let him inside, and the two argued. Appellant began to search for any sign of another man. He also removed all of Molien's clothing and digitally penetrated her sexual organ. Appellant repeatedly demanded to know with whom she was cheating on him. Each time that Molien replied that she had remained faithful to him, he struck her with his hands in the head/face region.[1] At some point while Appellant was striking her, in an attempt to get him to leave the room, Molien asked appellant to get her a glass of water. When Appellant briefly left the room to retrieve the water, Molien attempted to shut the bedroom door, but Appellant returned and was able to prevent her from doing so. While she was lying on the floor, Appellant used one hand to choke her while simultaneously pouring water from a jug down her throat. There is no indication in the record that he struck her with his hands at this point, however. Molien was eventually able to kick Appellant off of her and get dressed, and then the two of them went outside.
After Appellant left, Molien reported the assault. Appellant was later arrested and charged in a three-count indictment with aggravated sexual assault, assault/family violence, and aggravated assault with a deadly weapon. See TEX. PENAL CODE §§ 22.021, 22.01, 22.02(a)(2), respectively.[2] The count of the indictment charging aggravated assault with a deadly weapon alleged that Appellant:
cause[d] bodily injury to Melanie Molien by striking [her] head or body with [his] hands, and [he] did then and there use or exhibit a deadly weapon, to-wit: water, during the commission of said assault.
After trial, the jury convicted Appellant of non-aggravated sexual assault and of aggravated assault with a deadly weapon while acquitting him of assault/family violence. The jury assessed a seven year sentence for the aggravated assault with a deadly weapon conviction and a ten year sentence, suspended to community supervision, for the sexual assault conviction.
Court of Appeals
Among other claims on appeal, Appellant challenged the aggravated assault with a deadly weapon conviction, arguing that the evidence was legally insufficient to show that water was either used or exhibited *312 as a deadly weapon at the time he was striking Molien with his hands. In response, the State argued that it had presented sufficient evidence to show both that water and/or Appellant's hands were used as a deadly weapon. The court of appeals rejected the State's arguments and agreed with Appellant. Hernandez , 2016 WL 4256938, at *8. It relied on an opinion from another court of appeals to hold that assault is not a continuous offense and that the deadly weapon must be used "at some point at or before the offense is complete." Id. at *6 (citing Johnson v. State , 271 S.W.3d 756, 761 (Tex. App.-Waco 2008, pet. ref'd) ). Because the evidence failed to show Appellant used the water as a deadly weapon at the same time that he was striking her with his hands, the court of appeals held, there was insufficient evidence to support the deadly weapon element of the aggravated assault offense. Further, the court of appeals relied on this Court's opinion in Gollihar for the proposition that the State was bound to prove what it had pled in the aggravated assault count of the indictment-water as the deadly weapon-and that proof of a different deadly weapon would constitute a material variance. Id. (citing Gollihar v. State , 46 S.W.3d 243, 258 (Tex. Crim. App. 2001) ). The court of appeals reformed the judgment to reflect a conviction for the lesser-included offense of simple assault and remanded the cause to the trial court for a new punishment hearing. Id. at *15 (citing Thornton v. State , 425 S.W.3d 289 (2014) (ruling that a court of appeals has the authority to, and should, reform a judgment to reflect conviction for a lesser-included offense where it finds that some element of the greater offense is not supported by the evidence but that the jury necessarily found, and the evidence suffices to show, every element of the lesser-included offense) ).
In its petition for discretionary review, the State contends that the court of appeals' opinion is in conflict with precedent from this Court and that any variance between the specific deadly weapon pled in the indictment and the one proved at trial is a non-statutory immaterial variance.[3] See Johnson v. State , 364 S.W.3d 292 (Tex. Crim. App. 2012) (holding that a hypothetically correct jury charge need not incorporate immaterial variances). We granted the State's petition in order to address these contentions.
II. THE LAW
Malik/ Gollihar
We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." Malik v. State , 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." Id.
With respect to variances between allegations in the indictment and the State's proof at trial, we have declared that only material variances will affect the hypothetically correct jury charge. Gollihar , 46 S.W.3d at 256. A variance will be considered material if the variance prejudices the defendant's "substantial rights."
id="p313" href="#p313" data-label="313" data-citation-index="1" class="page-label">*313See id. at 248 ("[A] variance that is not prejudicial to a defendant's 'substantial rights' is immaterial."). "Allegations giving rise to immaterial variances may be disregarded in the hypothetically correct [jury] charge," while "allegations giving rise to material variances must be included." Id. at 257.
Johnson
In Johnson v. State , we had the opportunity to explain further the ways in which a material variance may arise.[4] Johnson was charged with aggravated assault that caused serious bodily injury by "hitting [the victim] with his hand or by twisting her arm with his hand." Johnson, 364 S.W.3d at 293. However, at trial the victim testified that her arm was broken as a result of her falling after Johnson threw her against a wall. Id. This Court concluded the variance was immaterial and upheld Johnson's conviction because the specific aggravated assault charge at issue was a result-of-conduct offense and the " 'precise act or nature of conduct ... [was] inconsequential.' " Id. at 298 (quoting Landrian v. State , 268 S.W.3d 532, 537 (Tex. Crim. App. 2008) ).
In the course of explaining the difference between a material variance and an immaterial variance, we described two ways in which variances can occur. The first type of variance occurs when the State's proof deviates from the statutory theory of the offense as alleged in the indictment; the State may not plead one specific statutory theory but then prove another. Id. Under Gollihar , we said, this type of variance is always material and renders the evidence legally insufficient. Id. at 294-95. The example we gave in Johnson derived from the retaliation statute, which "makes it a crime to threaten a 'witness' or 'informant.' " Id. at 294 (discussing Cada v. State , 334 S.W.3d 766 (Tex. Crim. App. 2011) ). "This first type of variance will occur if the State only pleads 'witness' in the charging instrument and proves only ... 'informant' at trial." Id. Under these circumstances, the hypothetically correct jury charge would require the jury to find that the defendant threatened a witness. Proof that he threatened an informant only, and not a witness, would amount to a material variance between pleading and proof that would result in an acquittal (even though it constitutes an offense to threaten an informant).
The second type of variance that Johnson identified is a "non-statutory allegation that is descriptive of the offense in some *314 way." Id. This type of variance can be either material or immaterial, we said, depending upon whether it would result in conviction for a different offense than what the State alleged. Id. at 295. One example of a case in which the Court found a variance to be material is Byrd v. State , 336 S.W.3d 242 (Tex. Crim. App. 2011). There, the indictment alleged an individual owner in a theft case, but the evidence at trial showed only that the property was taken from a Wal-Mart store; the individual identified as the owner in the indictment was "never mentioned." Id. at 244. The Court held the variance in the name of the owner of the stolen property "was significant enough that we could not conclude that the State had proved the same theft when it alleged that property was taken from [an individual] but proved, instead, that property was taken from Wal-Mart." Johnson , 364 S.W.3d at 297 (describing the gist of our holding in Byrd ).
We provided an example of an immaterial variance in Johnson . There we gave a hypothetical involving a prosecution for the result-oriented offense of murder in which the indictment alleges death by stabbing. Id. at 296. If the proof at trial shows that the victim was instead bludgeoned to death, we said, this would not constitute a material variance because the manner in which the murder was perpetrated does not affect how many murder offenses occurred. Id. at 297. Because the different means of causing death do not result in separate offenses, the variance in pleading and proof would not be material and would not inform the hypothetically correct jury charge or implicate legal sufficiency. Id. at 298. Similarly, we reasoned, in a prosecution for aggravated assault under Section 22.02(a)(1) of the Penal Code, the gravamen of the offense is causing serious bodily injury. Id. at 298 (citing Landrian , 268 S.W.3d at 537 ). How that serious bodily injury was caused does not "help define the allowable unit of prosecution for this type of aggravated assault offense, so the variance at issue [in Johnson ] cannot be material." Id.
III. ANALYSIS
This case involves a prosecution for aggravated assault under Section 22.02(a)(2) of the Penal Code rather than, as in Johnson , Section 22.02(a)(1). Under Section 22.02(a)(2), a simple assault becomes aggravated if the assailant uses or exhibits a deadly weapon in committing the assault. Of course, the gravamen of the offense remains the resulting bodily injury. Landrian , 268 S.W.3d at 537. For reasons we now address, we need not ultimately decide whether this case involves one continuous assaultive event or discretely prosecutable assaultive events; either way, we conclude there is no material variance.
The State's Theory: One Assault
The State argues that the facts of this case present but a single assault; that the striking with hands and the retrieval and use of water while choking the victim all occurred within an integrally actionable assaultive episode. Appellant's retrieval of water from another room did not sever the episode into two distinct offenses, in the State's view. If the State is correct, then a conviction for assault with a deadly weapon is supported for the simple reason that no variance between pleading and proof would exist. In that instance, it would be irrelevant that Appellant used the water as a weapon only after returning to the bedroom and did not use it earlier while striking Molien with his hands. The exact sequence in which the water was used would make no difference because the deadly weapon-water-was used or exhibited during the commission of the same assault in which Appellant struck Molien with his hands. Therefore, the evidence presented *315 at trial would be legally sufficient to support a conviction for aggravated assault with a deadly weapon.
Appellant's and the Court of Appeals' Theory: Discrete Assaults
But even if the facts of this case present more than one actionable assault, as Appellant and the court of appeals believed, we conclude that there is still no material variance between allegation and proof. Even assuming there were two assaults, one in which Appellant struck Molien with his hands and another in which he choked her with his hands while pouring water down her throat, only one of those assaults involved the use of a deadly weapon, and in that assault, the deadly weapon used was, indeed, water, as alleged in the aggravated assault count of the indictment.
In a legal sufficiency analysis, evidence is considered sufficient to support a conviction when, after considering all of the evidence in the light most favorable to the prosecution, a reviewing court concludes that any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We reiterate that, in Texas, the essential elements of the offense are "the elements of the offense as defined by the hypothetically correct jury charge for the case ." Johnson , 364 S.W.3d at 294 (emphasis added) (quoting Malik , 953 S.W.2d at 240 ). Therefore, a hypothetically correct jury charge reflects the governing law, the indictment, the State's burden of proof and theories of liability, and an adequate description of the offense for the particular case. Malik , 953 S.W.2d at 240.
Here, the court of appeals reasoned that, because aggravated assault is not a continuing offense, the on-going incident split into two discrete assaultive episodes when Appellant left the room to retrieve the water. The court of appeals believed it was the first assaultive episode, before Appellant left the bedroom, that was the assault pled in the indictment because it was during that first assault that Appellant struck Molien with his hands. Focusing thus on the initial assaultive conduct, the court of appeals concluded that, in order to justify a deadly weapon finding, a fact-finder would have to find the deadly weapon had been used or exhibited even as Appellant was striking Molien with his hands. Because there was no evidence that appellant used water at the same time that he was striking her with his hands, the court of appeals concluded, the evidence failed to show that the deadly weapon alleged was actually used "during the commission of the offense," as required by Section 22.02(a)(2).
But this analysis fails to consider all of the evidence. When focusing properly on all of the evidence presented at trial that might have supported the guilty verdict, we must also consider the evidence demonstrating the second assaultive event-during which Appellant actually used water. With a proper focus on all of the evidence that might have supported a guilty verdict, it becomes clear that the variance between the pleading and proof in this case is immaterial. If sufficiency of the evidence is measured against the second rather than the first assaultive event, then there does indeed appear to be a variance, but it is a variance that stems from the allegation in the indictment that Appellant struck Molien with his hands. The language of the aggravated assault count alleges "striking with the hands," but the testimony at trial showed that when Appellant returned to the bedroom with the water, he used one hand to choke Molien while simultaneously using the other to pour the water down *316 her throat, and the evidence does not show that he "struck" her at that point in time.
But this particular variance between the pleading and the proof should not be considered to be material in the sufficiency analysis because it would be patently immaterial under Johnson . 364 S.W.3d at 292. The variance regarding Appellant's use of his hands would be one describing only the manner and means by which the bodily injury was caused. Under Johnson , this would fall into the second category of variance, a "non-statutory allegation that describes the offense in some way." Id. at 295. Such a variance is material only when it converts the offense proven at trial into a different offense than what was pled in the charging instrument, which could potentially subject a defendant to another prosecution for the same offense. Id. There is no such danger here, however, because the fact that Appellant caused Molien to suffer bodily injury with his hands not by striking her with them, but instead by choking her,[5] does not make the aggravated assault that was proved at trial different than the aggravated assault that was pled in the indictment. What was pled and proved was that Appellant committed aggravated assault against Molien by causing her bodily injury and that he used water as a deadly weapon while doing so. The indictment did not specify the precise injury that would be shown by the evidence, and exactly how Appellant used his hands to cause the bodily injury is inconsequential to the legal sufficiency analysis.
IV. CONCLUSION
We hold that the court of appeals erred by failing to consider all of the evidence presented at trial that might have supported the aggravated assault offense alleged in the indictment when conducting its legal sufficiency analysis. The evidence presented in this case was not legally insufficient to support a conviction for aggravated assault with a deadly weapon. Accordingly, we reverse the judgment of the court of appeals to the extent that it reformed the trial court's judgment, and we reinstate the judgment of the trial court.
Richardson, J., filed a concurring opinion in which Walker, J., joined.
Newell, J., concurred in the result.
CONCURRING OPINION
Richardson, J., filed a concurring opinion in which Walker, J. joined.
I agree with the majority's decision to reverse the judgment of the court of appeals and reinstate Appellant's conviction. The evidence was sufficient to support the jury's verdict of aggravated assault with a deadly weapon. I write separately, however, because I arrive at that conclusion via a different route than the majority. In holding that the evidence was sufficient to support the conviction, the majority opines that the variance between what was alleged in Count 2 of the indictment and what was proved at trial is immaterial. I would instead hold that there was no variance at all.
The Testimony at Trial
The complainant, Melanie Molien, testified that she and Appellant had been dating, but their relationship had deteriorated, *317 and they had broken up. Early one morning, close to 2:00 a.m., Appellant began texting Melanie because he was convinced that she had been cheating on him. He came to her house about 3:00 a.m., she let him come in, and she said he was acting "like a madman, trying to see if anybody was in [her] house." Melanie said that he looked "enraged" and "psychotic," so she tried to calm him down. She said that while she was sitting on the bed he "pulled off [her] clothes" to look for "signs of [her] cheating," and he "put his fingers inside of [her] vagina." Melanie made it clear that she had not consented to him putting his fingers inside of her. She then described the rest of his attack:
Q. What did he do next?
A. He asked me again who was I fucking. I told him nobody. And he punched me so hard on my face and my temple my ear was ringing. I fell from the bed to the ground.
Q. So you were on the bed and he struck you in the face and you moved from the bed to the ground?
A. Yes.
Q. When you moved from the bed to the ground, just for clarification, you have no clothes on?
A. No clothes on, my glasses flew off.
Q. And what did he do?
A. He continued to say, "Who are you fucking?" and I would say "I'm not fucking anybody," and he would hit me over and over and over.
Q. About how many times did he hit you?
A. I said 20. I don't know because it lasted for hours.
Q. So this is about three in the morning when he showed up, marching around the house, you're sitting on the bed, he stripped your clothes off and stuck his finger inside of your vagina and started pummeling you with his fists?
A. Yes.
Q. Was there ever a time when he stopped and stepped back and said, "I'm sorry, I don't know what's going on?"
A. He never said sorry. The only time he would stop was in between-when he would ask me, "who are you fucking?" And just to get a breath of air, I'd say, "All right, hold on." And then I'd say, "I'm not fucking anybody," just so I could get a break so he'd stop hitting me.
Q. During this altercation, did you stay in that bedroom?
A. Up until we went outside, yes.
Q. When he was hitting you, was he using an open hand or a closed hand or something different?
A. He was punching me in my head, my temple, my face.
Q. Did he hit you anywhere else?
A. I remember mostly just my head and face because my ears were ringing and my head was killing me. I had bruises up and down, though.
* * *
Q. When you were able to calm him down, were you able to ask him to do something to get him to leave?
A. Yes. I asked him for water.
Q. Where was that water?
A. In the kitchen.
Q. Why did you ask him?
A. I was trying to get him to get out of the room so I could close the door.
Q. At that point, do you have a phone or anything else that you could grab and call for help?
A. No.
Q. Why?
*318 A. Because he took apart my phone when he first got there.
Q. And when he left to get water, what did you do?
A. I tried to close the door.
Q. Were you able to close the door?
A. No, he saw me.
Q. And what did he do?
A. He was screaming, "Neither one of us are going to make it out alive." And then he rushed in there with the water bottle and he threw the water in my mouth and started choking me at the same time.
Q. So he came back into the room?
A. Yes.
Q. And where were you?
A. I was on the ground, lying on the ground by the TV.
Q. And where was he?
A. He was on top of me, standing, like hovering around me.
Q. So he was standing over you?
A. Yes.
Q. Was one leg on each side of your body or something?
A. Yes, he straddled over me.
Q. Straddled you?
A. Yes.
Q. And you said he was pouring water on your face?
A. Yes.
Q. And choking you at the same time?
A. Yes.
Q. What do you mean by choking?
A. He was using one hand to choke me while he was pouring water down my throat.
Q. Okay. Now, when you say "choking," what does that mean?
A. Where I could not breathe. He was cutting off oxygen. I felt like I was dying, like I almost blacked out.
Melanie described the water bottle as a gallon-size water jug that had been about three quarters full of water. She said Appellant had just grabbed it off of the kitchen counter, and he came back into the bedroom. As the prosecutor was trying to demonstrate how the water was being used by Appellant, Melanie testified that Appellant was "just pouring it down me," and it was "going into [her] orifices." She said multiple times that he was pouring the water from the jug directly into her mouth.
Melanie then said she was able to kick him away so he fell against the window, and she said that she kept thinking, "he's going to kill me, he's going to kill me, he's going to kill me." She said he then "snapped," and finally walked outside and she was able to put her clothes back on and calm him down. She went outside with him, and during that time she threw up and asked him to take her to the hospital, but he refused. Melanie said that when she threw up that triggered a reaction in Appellant and he became enraged again and grabbed her whole body. She started screaming, and he finally left. Melanie called 911 and told the dispatcher that her boyfriend just tried to kill her. She had a friend take her to the Women's Shelter, and she went to the hospital after that.
Michael Casillas, a detective with the San Marcos Police Department, testified about some of the State's exhibits. State's Exhibit 30 is a photograph of the top of the water bottle. Detective Casillas noted that there was a substance visible on the top of the water jug, which could have been either lipstick or blood. State's Exhibit 31 is a picture to represent how much water was left in the jug-it was almost empty. Detective Casillas also stated that, to his knowledge, the water was used to "either drown her," or "to cause her *319 enough panic to give answers to the questions he was asking." Detective Casillas testified as follows:
Q. In the manner that was related to you and the way the water was used, could that potentially cause serious bodily injury or death?
A. Yes.
Q. Are you familiar with any other terminology that's consistent with the manner in which the water was used?
A. Yes, sir.
Q. What is that?
A. Waterboarding.
Q. Okay. What is your familiarity with waterboarding?
A. That it's the act of pouring water into someone's mouth and/or nose to-what I've heard is it's like an interrogation technique and that it causes the sensations of drowning, which, in my opinion, that causes me fear. And it's used as an interrogation technique, which, again, from information Melanie gave me, appears that that's what was happening.
The next witness to testify was Janie Mott, the registered sexual assault nurse examiner (SANE) in this case. She examined Melanie to assess her injuries. Ms. Mott stated that Melanie had two black eyes, red marks across her nose, and a bruise on her forehead. Ms. Mott observed trauma on both sides of Melanie's face. She also testified that she observed "petechia," which are small red ruptured blood vessels that can be caused by choking, as can the bruising on her ears. She testified that when someone is lying flat on their back, and water is poured into the mouth, it can go down the person's airway into the lungs and cause drowning. She agreed that, in the manner in which the water was used on Melanie, it could cause serious bodily injury or death. Her opinion was that Melanie could not breathe because Appellant was pouring water down her nose and into her mouth. On cross examination, Ms. Mott admitted that she did not see any marks on Melanie's neck other than the petechia.
Appellant testified in his own defense. He admitted to being at Melanie's house that morning. He admitted to having been in a physical fight with her-some slapping and grabbing. He denied pouring water down her throat.
The Indictment
The indictment against Appellant reads as follows:
On or about the 21st day of March, 2014, in Hays County, Texas, the Defendant, Teodoro Miguel Hernandez, did the following:
COUNT 1-A
[AGGRAVATED SEXUAL ASSAULT]
Did then and there intentionally or knowingly cause the penetration of the female sexual organ of Melanie Molien by defendant's finger, without the consent of Melanie Molien, and in the course of the same criminal episode the defendant attempted to cause the death of Melanie Molien by strangulation and waterboarding.
COUNT 1-B & C
[AGGRAVATED SEXUAL ASSAULT]
Did then and there intentionally or knowingly cause the penetration of the female sexual organ of Melanie Molien by defendant's finger, without the consent of Melanie Molien, and the defendant did then and there by acts or words threaten to cause, or place, Melanie Molien in fear that death or serious bodily injury would be imminently inflicted on Melanie Molien, and said acts or words occurred in the presence of Melanie Molien.
*320 COUNT 1-D
[AGGRAVATED SEXUAL ASSAULT]
Did then and there intentionally or knowingly cause the penetration of the female sexual organ of Melanie Molien by defendant's finger, without the consent of Melanie Molien, and in the course of the same criminal episode the defendant used or exhibited a deadly weapon, to-wit: water.
COUNT 2
[AGGRAVATED ASSAULT WITH A DEADLY WEAPON]
Did then and there intentionally, knowingly, or recklessly cause bodily injury to Melanie Molien by striking the victim's head or body with the defendant's hands, and the defendant did then and there use or exhibit a deadly weapon, to-wit: water, during the commission of said assault.
COUNT 3
[ASSAULT FAMILY VIOLENCE/STRANGULATION]
Did then and there intentionally, knowingly, or recklessly cause bodily injury to Melanie Molien, a person with whom the defendant has or has had a dating relationship, by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of Melanie Molien by applying pressure to the throat or neck and blocking the nose or mouth of Melanie Molien.
The Jury's Verdicts on the Three Counts
As to Count 1, the jury found Appellant guilty of the lesser included offense of sexual assault, which was charged as intentionally or knowingly causing the penetration of the sexual organ of another person without that person's consent. The jury did not find an aggravating factor. The aggravating factors were charged as either (1) attempting to cause the death by waterboarding and strangulation in the course of the same criminal episode, (2) placing the victim in fear that death or serious bodily injury would be imminently inflicted on the person, (3) threatening to cause death or serious bodily injury, or (4) using or exhibiting water as a deadly weapon in the course of the same criminal episode.
As to Count 2, the jury was given the choice to convict of either aggravated assault (with a deadly weapon) or the lesser included offense of assault (no deadly weapon). They convicted Appellant of aggravated assault with a deadly weapon, to-wit: water.
As to Count 3, the jury was instructed to find Appellant guilty if they found beyond a reasonable doubt that Appellant caused bodily injury to the victim by applying pressure to her throat or neck or blocking her nose or mouth and such conduct impeded her normal breathing or circulation of blood. The jury found Appellant not guilty of Count 3.
In assessing punishment, the jury agreed on ten years probation for the Count 1 sexual assault, and they gave Appellant seven years in prison for the Count 2 aggravated assault with a deadly weapon.
The jury's verdicts for Counts 1 and 2 are inconsistent.[1] In Count 1 the jury found that Appellant did not use water as a deadly weapon during the "same criminal episode" as the sexual assault. In Count 2, the jury found that Appellant did *321 use water as a deadly weapon "during the commission" of the bodily injury assault. The reason these two findings are inconsistent is because the phrase "same criminal episode" involves an entire course of conduct, which is an even broader concept than "during the commission of the offense."[2] The sexual assault and the aggravated assault all clearly occurred during the "same criminal episode."[3]
Nevertheless, it would be inappropriate for us to speculate as to why the jury rendered the verdicts they did.[4] "[T]he law does not bar inconsistent verdicts."[5] Where a multi-count verdict appears inconsistent, our inquiry is limited to a determination of whether the evidence is legally sufficient to support the count on which a conviction is returned.[6] This rule was adopted in Dunn v. United States ,[7] in which the United States Supreme Court held that a defendant may not attack a conviction on one count if there is sufficient evidence to support it, even though that conviction was inconsistent with an acquittal on another count in the same indictment.[8] In this case, despite seemingly inconsistent findings, so long as the evidence supports the finding of guilt under Count 2, the Dunn rule requires that the conviction be upheld.[9]
*322 On Direct Appeal
Appellant argued on direct appeal that there was insufficient evidence to support his conviction of aggravated assault with a deadly weapon as charged in Count 2 because there was insufficient evidence to establish beyond a reasonable doubt that he used or exhibited water as a deadly weapon while he was striking Melanie. He claims that the evidence shows that he had completed his act of striking Melanie before he went into the kitchen to get the water.[10] The court of appeals agreed with Appellant's argument.[11] They reformed Count 2 to reflect a conviction for the lesser included offense of assault.
On review before this Court, the majority has concluded that the court of appeals erred by failing to consider all of the evidence presented at trial that might have supported the aggravated assault offense alleged in the indictment when conducting its legal sufficiency analysis. Specifically, the court of appeals failed to consider the evidence supporting what the majority views as the second assaultive event-evidence showing that Appellant used one hand to choke Melanie while simultaneously using the other hand to pour water down her throat.
I, too, would reverse the court of appeals. But, under these particular facts, I disagree with the majority's approach holding that if there were two separate assaultive events, the variance still was not material.[12] I would hold that there was one bodily injury assault-one physical attack-during which Appellant caused bodily injury by hitting Melanie with his hands, and he used water as a deadly weapon when he tried to force it down Melanie's throat. As a result, there was no material variance in what was charged in Count 2 and what was proved at trial.
The Evidence Was Sufficient To Support The Guilty Verdict in Count 2 [13]
Appellant was charged in Count 2 under Texas Penal Code § 22.02(a)(2), which criminalizes using or exhibiting a deadly weapon during the commission of an assault.[14] The evidence presented at trial through Melanie's testimony was that,
• Appellant repeatedly struck Melanie with his fists.
• He left the room momentarily to retrieve a large water jug.
• He was not away from Melanie long enough for her to even get up from the floor and close the door.
*323 • Melanie was in his sight the entire time.
• Appellant rushed back into the room with the water jug.
• He started pouring water down Melanie's throat while his hand was around her neck.
The physical beating continued from the bed to the floor of Melanie's bedroom, where Appellant continued to beat her in the face and head. The momentary break in time for Appellant to retrieve the water jug did not mean that the beating had finished. While a bodily injury assault is not typically considered a continuing offense, under these particular facts, it is unrealistic not to view this as one bodily injury aggravated assault.
Thus, under the one-continuous-assault theory there is no variance between pleading and proof because the use of water as a deadly weapon occurred during the commission of the one continuous assaultive transaction.[15] However, rather than deciding between a finding of one assaultive transaction or two separate assaults, the majority first acknowledges that if there was one continuous assault, there would be no variance at all. And, in the alternative, the majority holds that if there were two assaults the variance between what was pled in Count 2 and what was proved was immaterial.
A variance between what is pled and what is proved occurs when the State proves the defendant guilty of a crime in a manner that varies from the allegations in the indictment.[16] A variance between an allegation in the indictment and the State's proof at trial is material if it prejudices the "substantial rights" of the defendant.[17] The court of appeals held that the State's evidence presented in support of the charge of aggravated assault with a deadly weapon differed materially from how that charge was pled in Count 2. The majority holds, however, that, assuming there were two separate assaults, the court of appeals failed to consider all of the evidence. In considering all of the evidence, the majority finds that it is sufficient to support the *324 conviction for aggravated assault with a deadly weapon because even though the use of the water occurred during the second assaultive event, Appellant used his hands to choke Melanie during the commission of that assault. Thus the variance, according to the majority, is in the manner and means by which the bodily injury was caused-a "non-statutory" descriptive allegation.[18]
For several reasons, I would have avoided that approach. First, the evidence that Appellant's hands impeded Melanie's breathing is arguably slim. Although it is true that portions of Melanie's testimony could be interpreted as evidence that Appellant's hands were impeding her breathing, the greater weight of the evidence supports the finding that the impediment to her breathing was caused by the water being poured down her throat, not by pressure from Appellant's hands. Second, the jury acquitted Appellant of the choking/strangulation charge in Count 3. Although we must ignore inconsistencies in the jury's verdicts, the fact that Appellant was found not guilty of the choking assault as alleged in Count 3 is troublesome. That acquittal undermines the strength of an aggravated assault conviction if we say that the underlying assault supporting that conviction is the same act of choking for which Appellant was acquitted. Finally, I disagree with the majority's conclusion that "exactly how Appellant used his hands to cause the bodily injury is inconsequential to the legal sufficiency analysis." A criminal defendant has the right to fair notice of the specific charged offense in order to be able to prepare a defense.[19] It is bad precedent to uphold Appellant's conviction for Count 2 on the basis that it is supported by the same evidence that was used to support the charge Appellant was acquitted of. If, in evaluating sufficiency, we must view the verdict under Count 2 independently of the other verdicts, then shouldn't we view the evidence supporting the offense charged in Count 2 independently of the evidence supporting the offense charged in Count 3-at least under the unusual circumstances of this case?
Under these facts, I find it a more accurate and realistic evaluation of the facts supporting the jury's verdict to hold that there was no variance at all. Appellant committed one continuous assault on Melanie during which he beat her and tried to choke her by pouring water down her throat. Count 2 alleged that Appellant committed aggravated assault by causing Melanie bodily injury by striking her with his hands (which is supported by the evidence) and that he used water as a deadly weapon during the commission of that assault. The deadly weapon alleged does not have to be what caused the bodily injury.[20] It need only be used or exhibited during the commission of the offense. Use of a deadly weapon during the commission of the offense means that "the deadly weapon was employed or utilized in order to *325 achieve its purpose."[21] Appellant's purpose in physically assaulting Melanie was to cause her bodily injury. There was ample testimony to support the finding that water could constitute a deadly weapon if it were forced down someone's airway and into their lungs. Even though, in this case, the water was not what caused the trauma to Melanie's head and face, it was used during the commission of the continuous physical assault on her.
Reviewing all of the evidence in the light most favorable to the jury's verdict in Count 2, I agree that the evidence presented at trial supported the jury's verdict that Appellant was guilty of aggravated assault with a deadly weapon, as charged in Count 2. With these comments, I concur.
OPINION ON REHEARING
In two counts of a three-count indictment, Appellant, Teodoro Hernandez, was charged with aggravated assault with a deadly weapon and family-violence assault by strangulation. The aggravated-assault-with-a-deadly-weapon count alleged that Hernandez struck the victim on her head or body with his hands while he exhibited or used water as a deadly weapon. The evidence showed that Hernandez struck the victim on her head or body and that he strangled her, but it showed that he poured water down her throat while he was strangling her, not while he was striking her. The court of appeals held that the evidence was insufficient to sustain the aggravated-assault-with-a-deadly-weapon conviction, but on original submission, this Court reversed the judgment of the court of appeals and ordered Hernandez's aggravated-assault-with-a-deadly-weapon conviction reinstated.
After we issued our opinion, Hernandez filed a timely motion for rehearing, which we granted. The State did not respond to Hernandez's motion for rehearing.
THE INDICTMENT
The multi-count indictment in this case states that,
COUNT 1-A
[AGGRAVATED SEXUAL ASSAULT]
[Hernandez] [d]id then and there intentionally or knowingly cause the penetration of the female sexual organ of Melanie Molien by [his] finger, without the consent of Melanie Molien, and in the course of the same criminal episode the defendant attempted to cause the death of Melanie Molien by strangulation and waterboarding.
COUNT 1-B & C
[AGGRAVATED SEXUAL ASSAULT]
[Hernandez] [d]id then and there intentionally or knowingly cause the penetration of the female sexual organ of Melanie Molien by [his] finger, without the consent of Melanie Molien, and [Hernandez] did then and there by acts or words threaten to cause, or place, Melanie Molien in fear that death or serious bodily injury would be imminently inflicted on Melanie Molien, and said acts or words occurred in the presence of Melanie Molien.
COUNT 1-D
[AGGRAVATED SEXUAL ASSAULT]
[Hernandez] [d]id then and there intentionally or knowingly cause the penetration *326 of the female sexual organ of Melanie Molien by [his] finger, without the consent of Melanie Molien, and in the course of the same criminal episode [Hernandez] used or exhibited a deadly weapon, to-wit: water.
COUNT 2
[AGGRAVATED ASSAULT WITH A DEADLY WEAPON]
[Hernandez] [d]id then and there intentionally, knowingly, or recklessly cause bodily injury to Melanie Molien by striking the victim's head or body with [his] hands, and the defendant did then and there use or exhibit a deadly weapon, to-wit: water, during the commission of said assault.
COUNT 3
[ASSAULT FAMILY VIOLENCE/STRANGULATION]
[Hernandez] [d]id then and there intentionally, knowingly, or recklessly cause bodily injury to Melanie Molien, a person with whom the defendant has or has had a dating relationship, by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of Melanie Molien by applying pressure to the throat or neck and blocking the nose or mouth of Melanie Molien.
The jury found Hernandez guilty of aggravated assault with a deadly weapon "as alleged in the indictment" and guilty of the lesser-included offense of sexual assault, but it acquitted him of family-violence assault by strangulation. The jury recommended that Hernandez be placed on community supervision for 10 years for the sexual-assault offense, but it sentenced him to seven years' confinement for the aggravated-assault-with-a-deadly-weapon offense.
THE COURT OF APPEALS
The court of appeals rejected the State's argument that assault is a continuous offense, instead holding that the State was bound to prove that Hernandez exhibited or used water as a deadly weapon either before or while he struck her on her head or body with his hands. Hernandez v. State , No. 06-15-00167-CR, 2016 WL 4256938, at *1 (Tex. App.-Texarkana Aug. 5, 2016), rev'd , 556 S.W.3d 308, 2017 WL 4675371 (Tex. Crim. App. Oct. 18, 2017). Finding that the evidence did not support those allegations, it further held that Hernandez's conviction for aggravated assault with a deadly weapon could not stand. Id. According to the court of appeals, because the evidence was insufficient, the proper remedy was to reform Hernandez's conviction for aggravated assault to reflect a conviction for simple assault and to remand the case to the trial court for a new punishment hearing. Id. at *9.
ON ORIGINAL SUBMISSION
We granted the State's petition for discretionary review. The State again argued that there was no variance because assault is a continuing offense and that the evidence to support the deadly weapon allegation was sufficient because it showed that Hernandez struck Molien and that he poured water down her throat while he choked her. Hernandez , 556 S.W.3d at 313-15, 2017 WL 4675371, at *3. We declined to resolve the case on that ground. Id. Instead, we decided that, even if the State had to prove two separate assaults, it was not required to prove the manner and means alleged in the aggravated-assault-with-a-deadly-weapon count. Id. at 315-16, 2017 WL 4675371, at *4. We reasoned that the manner-and-means allegation is not included in the hypothetically-correct jury charge because the statute is result-oriented, and consequently, the allegation should *327 be disregarded in a Jackson sufficiency analysis. Applying our reasoning, we held that the variance between how the manner-and-means allegation was pled and proven was immaterial because it was a non-statutory allegation that did not describe a unit of prosecution. Id. We also noted that Hernandez was not potentially subject to being subsequently prosecuted for the same aggravated-assault-with-a-deadly-weapon offense as alleged in the indictment because our analysis did not convert the offense alleged into an entirely different offense. Id.
Addressing the lower court's sufficiency analysis, we concluded that it erred when it limited its analysis to the manner and means alleged in the aggravated-assault count-i.e., that Hernandez struck Molien while using water as a deadly weapon. Id. When all of the evidence was examined, we explained, it showed that the strangulation assaultive event involved the use of water as a deadly weapon, which was sufficient to affirm the aggravated-assault-with-a-deadly-weapon conviction. Id.
ANALYSIS
a. Unit of Prosecution
On rehearing, Hernandez first argues that this Court violated his due process and double jeopardy rights on original submission by incorrectly applying the hypothetically-correct-jury-charge doctrine. He asserts that, on original submission, this Court relied on Johnson v. State , 364 S.W.3d 292 (Tex. Crim. App. 2012) to hold that the manner and means alleged (striking with hands and impeding of breathing by applying pressure to the throat or neck) were immaterial to the legal sufficiency analysis, but Johnson held that the manner and means are immaterial only when they do not "define or help define the allowable unit of prosecution." Id. at 298. Here, Hernandez argues, the factual allegations are material because they define the allowable units of prosecution for the two separate assaults. Hernandez contends this is because it is "only by looking at the manner and means that the litigants were able to distinguish one unit of prosecution from the other," and "[r]emoving the striking and replacing it with choking switches units of prosecution."
Hernandez is mistaken. Unless the legislature expressly defines an allowable unit of prosecution for a particular criminal offense, the gravamen or gravamina of the offense best describe the allowable unit of prosecution. Garfias v. State , 424 S.W.3d 54, 61 (Tex. Crim. App. 2014). The legislature has not expressly defined the unit of prosecution for aggravated assault with a deadly weapon, but we have determined that the offense is result oriented and that the gravamina of the offense are the victim and the bodily injury that was inflicted. Johnson , 364 S.W.3d at 298, n.45. Consequently, because the manner and means by which an aggravated assault is effectuated is not a unit of prosecution for aggravated assault, nor does it describe a unit of prosecution for aggravated assault, the manner-and-means allegation is not included in the hypothetically-correct jury charge and should be disregarded in a legal-sufficiency analysis. We reaffirm our conclusion on original submission that, assuming that the State had to prove two offenses, under Johnson , the variance between the manner-and-means alleged in the aggravated-assault-with-a-deadly-weapon count and the proof at trial is only an immaterial non-statutory allegation.[1]
*328 To the extent that Hernandez argues that our decision on original submission violated his double-jeopardy rights, we disagree. The State can readily determine by resort to the indictment, the jury charge, and the jury's verdict forms, that Hernandez was charged with, and convicted of, aggravated assault with a deadly weapon when he struck Molien with his hands while he exhibited or used water as a deadly weapon. Hernandez , 556 S.W.3d at 315-16, 2017 WL 4675371, at *4. It need not refer to the evidence. However, in the unlikely event that the State nonetheless attempts to reprosecute Hernandez for the same offense, the entire record is available to vindicate a subsequent-prosecution claim. Gollihar v. State , 46 S.W.3d 243, 258 (Tex. Crim. App. 2001).
b. Due Process Right to Notice
Hernandez also appears to complain that our analysis on original submission violated his due-process right to notice because he was not able to prepare a meaningful defense.[2] Although it is possible that a defendant might be entitled to a new trial due to a lack of notice based on a variance,[3] we are not persuaded such is the case here. Hernandez knew that he was accused of striking Molien, strangling Molien, and pouring water down her throat that night, but he categorically denied that he ever put his hands on her neck or that he poured water down her throat. Even if the indictment stated that Hernandez exhibited or used water as a deadly weapon while he strangled Molien, as he claims it should have, there is no reason to believe that he would have suddenly shifted course and admitted to strangling Molien or exhibiting or using water as a deadly weapon. Gollihar , 46 S.W.3d at 258.
c. Dunn
Next, Hernandez argues that the State presented the jury with a theory that multiple assaults occurred, and because the jury was presented with two distinct assaults, this Court erred on original submission when we failed to consider the bases on which the jury reached its verdicts under Dunn v. United States , 442 U.S. 100, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979). Hernandez asserts that, under Dunn , the sufficiency review for assault in a multi-count assault indictment must identify which assault was charged and tried under each count, and a variance between "the indictment and the trial theory on the one hand and the hypothetically-correct jury *329 charge on the other must be considered material."
In Dunn , Dunn testified during a grand-jury proceeding, but he later recanted that testimony at an attorney's office on September 30 while under oath. Dunn , 442 U.S. at 103, 99 S.Ct. 2190. He was charged with making a false declaration under oath "in any proceeding before or ancillary to any court of grand jury of the United States." Id. at 102-04, 99 S.Ct. 2190. At a court hearing on October 21, Dunn testified and again recanted his grand-jury testimony. Id. at 104, 99 S.Ct. 2190. The State indicted him for the September 30 statement, and the jury convicted him based on the September 30 statement. Id. at 106, 99 S.Ct. 2190. The court of appeals upheld the conviction. Id. at 104-05, 99 S.Ct. 2190. According to it, the September 30 statement did not qualify as an "ancillary proceeding," but his recantation at the October 21 hearing did. Id. at 105. The court of appeals reasoned that, although Dunn was indicted and convicted for his September 30 statement, there was only a nonprejudicial variance between the indictment alleging September and the proof that the October hearing met the "ancillary proceeding" element. Id. The Supreme Court reversed and stated that there was no variance between the indictment and proof at trial. Id. Instead, there was a discrepancy between the basis on which the jury rendered its verdict (the September statement) and that on which the court of appeals upheld the conviction (the October statement). Id.
We do not think that Dunn controls the outcome of this case. We have characterized the holding in Dunn (and its progeny) as stating a rule that applies only "when a defendant is convicted on a charge that was neither alleged in an indictment nor presented to the jury ...." Adames v. State , 353 S.W.3d 854, 859-60 (Tex. Crim. App. 2011). We reasoned that, in such a situation, the defendant's constitutional right to notice of the specific charge he must defend against is violated. Id. Here, Hernandez was on notice from the indictment allegations that he was charged with aggravated sexual assault, aggravated assault with a deadly weapon, and family-violence assault by strangulation stemming from a series of events during a single night, and the State presented evidence that Hernandez committed those offenses. The jury was also instructed on those offenses. This is not a situation in which we have reinterpreted the statute after Hernandez was convicted as in McCormick v. United States . 500 U.S. 257, 273, 1807" index="78" url="https://cite.case.law/us/500/257/#p273">111 S.Ct. 1807, 114 L.Ed.2d 307 (1991), nor is it one in which we are upholding Hernandez's aggravated-assault-with-a-deadly-weapon conviction based on a different statutory provision than was alleged in the charging instrument and presented to the jury as in Cole v. Arkansas , 333 U.S. 196, 197, 68 S.Ct. 514, 92 L.Ed. 644 (1948), nor is it one in which the indictment, trial evidence, and jury charge were based on a description of a unit of prosecution for the offense-such as "ancillary proceeding" in Dunn -and affirmed on another theory. Dunn , 442 U.S. at 107, 99 S.Ct. 2190.
We determine the basis of a jury's verdict for Dunn purposes by applying our variance law, as Hernandez alludes to in his brief. In line with that jurisprudence, and as applied to Dunn , a non-statutory allegation that does not describe a unit of prosecution does not constitute a basis for the jury's verdict because it is not part of the legal or factual theory submitted to the jury, even if it is included in the jury charge. The State's legal theory was that Hernandez committed aggravated assault with a deadly weapon. The State's factual theory was that Hernandez exhibited or used water as a deadly weapon while he caused Molien bodily injury, and the evidence *330 supported that theory. The State was not bound to prove how Hernandez assaulted Molien or how he exhibited or used water as a deadly weapon as part of its factual theory. There might be a Dunn problem if, for example, the State had alleged that Hernandez caused a specific bodily injury, and the jury convicted him on that basis, but an appellate court revised the basis of that conviction because, while there was insufficient evidence to support the pled injury, there was sufficient evidence of another injury to support the conviction. This is because the allegation would be a non-statutory allegation that describes a unit of prosecution for aggravated assault, and in that scenario, Hernandez's conviction would have been sustained based on a factual theory not alleged in the indictment. Similarly, if Hernandez had been indicted for aggravated assault with a deadly weapon, and the jury convicted him of that offense, but the evidence showed only that he caused the victim serious bodily injury, not that he used a deadly weapon, an appellate court would err in upholding the conviction based on the serious bodily injury because that "legal theory" was not presented to the jury.
We must also address the jury charge. The charge contained a paragraph labeled, "Accusation," which restated the by-striking manner-and-means allegation, but the abstract and application portions of the charge refer only to "bodily injury." The issue is which portion of the jury charge controls for a Dunn analysis. The relevant portions of the jury charge state that,
Accusation
In Count II, the state accuses the defendant of having committed the offense of aggravated assault. Specifically, the accusation is that the defendant intentionally, knowingly, or recklessly caused bodily injury to Melanie Molien by striking Melanie Molien's head or body with the defendant's hands, and during the commission of this assault the defendant used or exhibited a deadly weapon, to-wit: water.
* * *
Application of Law to Facts
You must determine whether the state has proved, beyond a reasonable doubt, three elements. The elements are that-
1. The defendant, in Hays County, Texas, on or about March 21, 2014, caused bodily injury to Melanie Molien; and
2. The defendant did this-
a. intending to cause bodily injury
b. knowing that he would cause bodily injury; or
c. with recklessness about whether he would cause bodily injury; and
3. The defendant, during the alleged assault, used or exhibited a deadly weapon, to-wit: water.
Here, even if the "Accusation" paragraph controlled, the by-striking manner-and-means allegation in that paragraph does not constitute a basis for the jury's verdict, as we have already explained, so there is no Dunn problem. The basis of the jury's verdict was that Hernandez caused Molien bodily injury and that he exhibited or used water as a deadly weapon while he did so. TEX. PENAL CODE § 22.02(a)(2).
3. Preclusive Effect of an Acquittal of One Count on the Sufficiency Analysis of Another Count
Next, Hernandez argues that this Court on original submission failed to give effect to the jury's acquittal of the family-violence-by-strangulation count when we upheld the aggravated-assault-with-a-deadly-weapon conviction based upon the same conduct for which Hernandez was acquitted. We are not persuaded. Hernandez *331 appears to assert a multiple-punishments claim, Garfias , 424 S.W.3d at 58, but there is no multiple-punishment problem here because Hernandez was convicted of only one offense-aggravated assault with a deadly weapon-consequently, he could not have been punished for the same conduct twice. Had Hernandez been convicted of both counts, he might prevail on a multiple-punishments double-jeopardy claim, but we need not resolve that question here.[4]
Hernandez's real complaint seems to be that the jury reached inconsistent verdicts. When measuring the sufficiency of the evidence, each count must stand or fall on its own,[5] and when analyzing the sufficiency of the evidence of a particular conviction, we consider all of the evidence admitted at trial under the Jackson standard. Tate v. State , 500 S.W.3d 410, 413 (Tex. Crim. App. 2016). But, if a defendant is acquitted of one count and convicted of another based on the same evidence in a single trial, the defendant cannot rely on the inconsistent verdicts to attack the defendant's conviction.[6] Dunn v. United States , 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932).
CONCLUSION
We affirm our original opinion reversing the judgment of the court of appeals, and we reject Hernandez's arguments on rehearing for the reasons stated herein. No further motions for rehearing will be entertained.

Molien testified that appellant struck her with his hands in the head/face region for hours, but Appellant testified this went on for only a few minutes, not hours. Asked specifically whether Appellant had struck her with "an open hand" or "a closed hand," Molien simply responded that Appellant had "punched" her repeatedly.

For the purposes of this opinion, Section 22.02 (a) is the only relevant statute. There the offense of aggravated assault is defined as follows:
(a) A person commits an offense if the person commits assault as defined in § 22.01 and the person:
(1) causes serious bodily injury to another, including the person's spouse; or
(2) uses or exhibits a deadly weapon during the commission of the assault.

Appellant filed his own petition for discretionary review seeking to upend the court of appeals' ruling affirming his sexual assault conviction, which he had also challenged, unsuccessfully, on direct appeal. We refused Appellant's petition for discretionary review.

Even before Johnson , this Court had confronted the question of the materiality of a variance with respect to a deadly weapon finding. In Flenteroy v. State , 187 S.W.3d 406 (Tex. Crim. App. 2005), the indictment charged the appellant with aggravated robbery with a deadly weapon, to wit, a screwdriver. Id. at 407. The jury convicted the appellant of the lesser-included offense of simple robbery, but it nevertheless made a deadly weapon finding at the punishment phase that the appellant had used a "hard metal-like object" during the offense. Id. at 409. The trial court reasoned that submitting the deadly weapon charge to the jury was proper because the aggravated robbery count of the indictment provided sufficient notice for the appellant to be aware that a deadly weapon issue would arise. Id. at 410. This Court agreed, holding that, because the State gave sufficient notice of a deadly weapon issue and proved the appellant used some variety of deadly weapon, the variance between the specific deadly weapon alleged in the indictment and that which was proved at trial was immaterial because the indictment language was adequate to inform the appellant of the charge against him so that he might prepare a defense. Id. The Court explained that the appellant's defense was not affected by the screwdriver allegation because the foundation of his defense was that he had not used a deadly weapon at all, and that any variance with respect to what the deadly weapon may have been was inconsequential to that defense. Id. at 411.

The Court recently held that any action that impedes normal breathing causes bodily injury per se . Marshall v. State , 479 S.W.3d 840, 844 (Tex. Crim. App. 2016). Thus, pursuant to our precedent, Appellant committed at least a simple assault when he re-entered the bedroom. If he also used water as a deadly weapon at that time, then the assault was aggravated under Section 22.02(a)(2).

I also note that the majority's opinion is inconsistent with the jury's verdict in Count 3. Appellant was acquitted by the jury of Count 3, which charged assault by strangulation or choking.

See Johnson v. State , 777 S.W.2d 421, 423 (Tex. Crim. App. 1989) [hereinafter Charles Johnson ] (construing Article 42.12, § 3g and distinguishing the phrase "in the course of the same criminal episode" from "during the commission of the offense"). In Charles Johnson , this Court held that the jury could consistently find that the appellant used or exhibited a deadly weapon during "the course of the same criminal episode" but, nonetheless, did not use or exhibit a deadly weapon during "the commission of the offense." In this case, however, the opposite conclusion was reached by the jury, which renders the verdicts inconsistent.

The only statutory definition of "criminal episode" is in Texas Penal Code § 3.01, which prefaces and constrains the definition to the chapter: "In this chapter, 'criminal episode' means the commission of two or more offenses ... pursuant to the same transaction." However, where words are not defined elsewhere in a statute, "the words employed are ordinarily given their plain meaning." Campos v. State , 623 S.W.2d 657, 658 (Tex. Crim. App. 1981). "Criminal episode" has been interpreted to mean "the period immediately before or after the actual act of sexual assault." Burns v. State , 728 S.W.2d 114, 116 (Tex. App.-Houston [14th Dist.] 1987, pet. ref'd.) (holding that, for the purposes of sections 22.011 and 22.021, "the 'criminal episode' commences when the attacker in any way restricts the victim's freedom of movement and it ends with the final release or escape of the victim from the attacker's control," and that "the use or exhibition of a weapon at any time during this period will elevate the crime to an aggravated status"). The commission of multiple offenses (whether the same or different statutory offenses) can occur during one criminal episode.

Dunn v. United States , 284 U.S. 390, 393-94, 52 S.Ct. 189, 76 L.Ed. 356 (1932).

Guthrie-Nail v. State , 506 S.W.3d 1, 6 (Tex. Crim. App. 2015) (first citing United States v. Powell , 469 U.S. 57, 68-69, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) ; and then citing Dunn , 284 U.S. at 393, 52 S.Ct. 189 ).

Powell , 469 U.S. at 64-67, 105 S.Ct. 471 (1984) (holding that any attempt to determine the jury's reasons for reaching inconsistent verdicts would require pure speculation and involve an improper inquiry into jury's deliberations).

Dunn, 284 U.S. at 393-94, 52 S.Ct. 189.

Id.

"We also reject, as imprudent and unworkable, a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground ... of some error that worked against them.... [W]e note that a criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts.... Sufficiency-of-the-evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt." Powell , 469 U.S. at 66-67, 105 S.Ct. 471.

Hernandez v. State , No. 06-15-00167-CR, 2016 WL 4256938, at *4 (Tex. App.-Texarkana, Aug. 5, 2016).

Id. at *8.

The majority opinion avoids deciding whether this case involves one continuous assaultive even or two separate assaultive events because, either way, the majority finds that there is no material variance.

When evaluating legal sufficiency, we must review all of the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found, beyond a reasonable doubt, that Appellant was guilty of the charged offense. Jackson v. Virginia , 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)."This 'familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " Klein v. State , 273 S.W.3d 297, 302 (Tex. Crim. App. 2008) (citing Jackson, 443 U.S. at 319, 99 S.Ct. 2781 ).

The underlying assault alleged in Count 2 was causing bodily injury to another under Texas Penal Code § 22.01(a)(1).

I realize that using the term "one continuous assaultive transaction" may be viewed as an attempt to resurrect a form of the carving doctrine, which this Court abandoned in favor of the Blockburger double jeopardy test. See Ex parte McWilliams , 634 S.W.2d 815, 817 (Tex. Crim. App. 1982) (op. on reh'g) (holding that the carving doctrine is unsound because its application has been erratic and it is not mandated by the Double Jeopardy Clauses of either the United States or Texas Constitutions); Blockburger v. United States , 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). However, under the facts of this case, I would hold that the continuous assaultive transaction rule applies just as it did in 1905 when this Court decided Paschal v. State , 49 Tex.Crim. 111, 90 S.W. 878 (1905). In Paschal , the evidence showed that Appellant, who was angry with his wife, went to find her at her friend's house. He was carrying a paper sack full of oranges, and threw one at his wife. It struck her between the eyes and she fell. "He then hit her with his fist, knocked her down, and kicked her, and then threw a rock and hit a cow." Then, he "stamped and choked his wife." She ran into the hogpen, and he followed and hit her again. She then ran to the house, and he caught her at the fence and cut her clothes. She then ran into the house and he jerked her to the floor and kicked her. He ran outside and grabbed a stick and came back into the house, but he did not hit her with the stick. The Court held that this was one aggravated assault. Although the "continuous assaultive transaction" test is disfavored because it has been "randomly applied," see Ex parte McWilliams , 634 S.W.2d at 823, I would hold that it is not an extinct concept, it applies under these facts, and its application here is not inconsistent with Blockburger since double jeopardy is not an issue in this case.

Gollihar v. State , 46 S.W.3d 243, 246-47 (Tex. Crim. App. 2001).

Id. at 248.

The majority cites to Johnson v. State , 364 S.W.3d 292, 294 (Tex. Crim. App. 2012) [hereinafter Perry Montez Johnson ]. In Perry Montez Johnson , the State alleged that Johnson hit the victim with his hands; however, the victim testified that he threw her against a wall. This Court found that variance immaterial.

State v. Barbernell , 257 S.W.3d 248, 250 (Tex. Crim. App. 2008).

Tucker v. State , 274 S.W.3d 688, 691 (Tex. Crim. App. 2008) ("The State is not required to show that the 'use or intended use causes death or serious bodily injury' but that the 'use or intended use is capable of causing death or serious bodily injury.' ") (emphasis in original). The allowable unit of prosecution in a result-of-conduct offense is each victim, so how the victim's injuries were caused was not the gravamen of the offense.

Plummer v. State , 410 S.W.3d 855, 858 (Tex. Crim. App. 2013) (quoting Patterson v. State , 769 S.W.2d 938, 941 (Tex. Crim. App. 1989) ). "A weapon can be deadly by design or use.... An object is deadly weapon by usage if 'in the manner of its use or intended use,' the object 'is capable of causing death or serious bodily injury.' " Tucker , 274 S.W.3d at 691 (first quoting Tex. Penal Code § 1.07 (a)(17)(B) ; and then citing McCain v. State , 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) ).

In Johnson , we also stated that,
Had the State pled and proved different injuries, a question might arise as to whether the difference between what was pled and what was proved was significant enough to be material. Separate crimes of aggravated assault could be based upon separately inflicted instances of bodily injury.
Johnson , 364 S.W.3d at 298. That statement is not implicated in our analysis. If we assume that two offenses were alleged, the State nonetheless did not plead and prove different injuries, i.e., it did not allege a specific bodily injury and prove a different bodily injury in either count; instead both counts cited only "bodily injury." Hernandez , 556 S.W.3d at 316, 2017 WL 4675372, at *4.

To the extent that Hernandez's complaint could be construed to directly challenge the indictment allegations, he has forfeited that claim. "If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding." Tex. Code Crim. Proc. art. 1.14(b). No such objection was made here.

Johnson , 364 S.W.3d at 299 n.47 (concluding that the evidence was sufficient to support the conviction but reserving the question of whether the variance was "significant enough to warrant a new trial based upon lack of notice").

For example, in Bigon v. State , 252 S.W.3d 360 (Tex. Crim. App. 2008), we held that there was a multiple-punishment violation where Bigon had been convicted of intoxication manslaughter, manslaughter, and felony murder after a car accident because, under the facts of that case, he was punished for the same conduct more than once under distinct statutes even though the legislature intended for the conduct to be punished only once. Id. at 372.

Dunn v. United States , 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932) ("Each count in an indictment is regarded as if it was a separate indictment."); see Hernandez , 556 S.W.3d at 316-17, 2017 WL 4675371, at *5 (Richardson, J., concurring).

Although Hernandez's claim is akin to a collateral-estoppel claim, there is a distinction between an inconsistent-verdicts claim and a collateral-estoppel claim. The former applies when there has been only one trial, and the latter applies only when there have been two trials. See Hite v. State , 650 S.W.2d 778, 783 n.7 (Tex. Crim. App.1983).