In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-21-00127-CR**
_____

**GUS GUEVARA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Cause No. 88817-CR**

## OPINION

A jury convicted Gus Guevara on four counts of a six-count indictment—specifically, counts two and three—which charged Guevara with aggravated sexual assault of a child, count five—which charged Guevara with touching a child's breast, and count six—which charged

Guevara with causing a child to touch his genitals.[1] In the punishment hearing that followed, the trial court sentenced Guevara to prison for life on the two convictions finding him guilty of sexually assaulting a child. The court assessed twenty-year sentences on the other two counts, stacking the sentences so that Guevara would begin serving his sentence for causing the child to touch his genitals after completing his sentence on his conviction for touching the child's breast.

Guevara appealed, raising two issues for our review. In issue one, Guevara argues the judgment should be reversed because the evidence is insufficient to support his four convictions. In issue two, Guevara argues the trial court erred in admitting the testimony of four witnesses who testified about sexual assaults he allegedly committed against two other children, years before he allegedly sexually assaulted the child named in

---

[1]Tex. Penal Code Ann. § 22.021(a)(2)(B) (Aggravated Sexual Assault of a Child); *id*. § 21.11(a)(1) (Indecency With a Child). Guevara filed his appeal in the Fourteenth Court of Appeals. But in April 2021, the Texas Supreme Court signed a docket-equalization order and transferred the appeal to the Ninth Court of Appeals to equalize the appellate dockets. *See* Tex. Gov't Code Ann. § 73.001. As to the counts on which the jury found Guevara not guilty, the jury found him not guilty of penetrating the child's sexual organ and not guilty of penetrating the child's anus.

2

the six counts of the indictment as the victim of his crimes. Because we conclude Guevara's arguments lack merit, we will affirm.

Background

The case against Guevara was tried in April 2021. The six count indictment is based on acts that allegedly occurred between June 30, 2016, and November 21, 2019, the day the indictment was filed. The indictment alleges that when the acts of sexual abuse occurred, *Luciana*,[2] the child named as the victim of the crimes, was not yet fourteen years old. As to the offenses alleged by the indictment,

1) count one alleges Guevara intentionally or knowingly caused the penetration of Luciana's sexual organ by his sexual organ,
2) count two alleges that Guevara intentionally or knowingly caused Luciana's sexual organ to contact his mouth,
3) count three alleges that Guevara intentionally or knowingly penetrated Luciana's mouth with his sexual organ,
4) count four alleges that Guevara intentionally or knowingly penetrated Luciana's anus with his sexual organ,
5) count five alleges that Guevara intentionally or knowingly engaged in sexual contact with Luciana by touching her breast, and

---

[2]To protect the identity of the victim of the indictment and the members of her family except for Guevara, we use pseudonyms for their names. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process"). The first time a pseudonym is used for a person's name, we indicate a pseudonym is being used with italics.

6) count six alleges that Guevara, with the intent to arouse or gratify his sexual desire, intentionally or knowingly engaged in sexual contact by causing Luciana to touch his genitals.

Eight witnesses testified in the guilt-innocence phase of the trial. All eight were called by the State. In closing argument, Guevara's attorney argued that we don't know why young people tell stories, "some of them are true, some of them are not." Then, he suggested that even though eight witnesses testified in the trial, the case boiled down to a "she said, he said case[,]" but he argued that nothing corroborated Luciana's story about the elements the State was required to prove to meet its burden of proving that Guevara was guilty of the crimes on which he had been tried.

On appeal, Guevara argues the evidence "so overwhelmingly outweighs the evidence which shows that he committed these four felonies that the jury's verdict is unsupported by proof beyond a reasonable doubt." To support that argument, Guevara relies on the following evidence: (1) Detective Cecil Arnold's testimony, whom Guevara claims testified that Guevara denied having sexually abused Luciana during the detective's investigation of Luciana's claims; (2) evidence showing that Luciana waited two years before reporting the

4

sexual abuse to an adult; and (3) the fact the jury acquitted Guevara on two of the indictment's six counts.

Viewed in the light most favorable to the verdict, the evidence shows that Luciana was living with her parents in April 2021 when the case went to trial. She was in the third grade when she testified and approaching her tenth birthday. Luciana's mother—*Helen*—testified that between June 2016 and October 2019, the family was living with Guevara (Helen's father) in a townhome. Luciana was in third grade when she told a school counselor she had been sexually abused by her grandfather when she was five or six years old.[3] Helen described the family's sleeping arrangements in the two-bedroom townhome, explaining her father had a bedroom of his own. As to Helen's family, Helen testified they either slept in the other bedroom or that Luciana and

_____

[3]Helen explained she was living in Guevara's home when Luciana was born, but that she had moved out and back into Guevara's home a few times since then. That said, Helen testified when the incident the subject of the Guevara's indictments occurred, her family had moved back in and had been living in Guevara's home since her son was "about a year old[.]" Helen testified that Luciana was about two years older than her son.

her brother sometimes "slept anywhere they fell asleep[,]" which was either upstairs "in our bedroom or the living room."[4]

Helen also described how sometimes her work required that she leave her children with Guevara (Helen's father) when she went to work or left to run errands. For example, Helen testified that in 2016, her husband was working from sunup until sundown at two restaurants. Helen testified that she too worked at restaurants in 2016, but her work ended around November 2016. According to Helen, after her work ended around November 2016, she stayed at home and took care of her children until October 2017, when she got another job. Still, even when staying home and caring for her children, Helen said there were occasions when she left the home to run errands. When that happened, Helen explained she left Guevara with her children in his home.

Helen also was asked about changes she noticed in Luciana's behavior. Helen testified she noticed a significant change in Luciana's behavior around October 2018. Helen explained the changes in behavior were to everyone in the home, but Helen also said Luciana's behavior

_____

[4]Although the record is unclear, it appears the living room in the townhome was located downstairs from the context of other testimony when viewed from the record as a whole.

changed even more toward Guevara. When describing what had changed, Helen testified Luciana began exhibiting signs of anger toward Guevara, and she suddenly began secluding herself from everyone in the home. Before Luciana's behavior changed, Helen described Luciana as someone who was "loveable, just always with smiles on her face[.]" But afterwards, Helen said Luciana begged to go with her when she left the house and made sad facial expressions when she left Luciana in Guevara's care. Helen also noticed that Luciana stopped coloring, even though Helen explained that before things changed "[t]hat was her thing."

Given the jury's decision to acquit Luciana on some of the counts, it's clear the jury chose to believe most but not all of Luciana's testimony. Luciana, nearly ten years old when she testified, told the jury she was six and in kindergarten when Guevara sexually abused her in his bedroom. Luciana testified the abusive behavior occurred when her parents weren't at home, Guevara sexually abused her more than once, and Guevara stopped sexually abusing her when she was around seven years old. According to Luciana, all the incidents occurred in Guevara's bedroom. Luciana testified that her then four-year-old brother was in the living room when these incidents occurred.

Luciana described the details of the abuse. According to Luciana, Guevara: (1) "put his private part inside mine[;]" (2) "put his private in my bottom[;]" (3) used his hands to touch her chest; (4) had her put her mouth on his private part; and (5) had her put chocolate syrup on his penis. When Luciana was asked what Guevara made her do with her hands, she testified he "made me touch his private." And when asked whether Guevara ever touched her "front private with anything other than his front private[,]" Luciana responded, "Yes." Asked for more detail, Luciana testified that Guevara touched her "front private" with his hand and tongue. She testified his conduct occurred "sometimes every day."

On cross-examination, Guevara's attorney asked Luciana: "[H]ow many times have you had told this story?" Luciana responded and said she had told it "[a] lot." When the attorney asked her to be more specific, Luciana testified: "It has been more than a dozen times."

Cynthia Silva, Luciana's school counselor, was also called by the State to testify in the trial. Silva testified that on October 3, 2019, she asked Luciana to come talk to her in her office after learning from a parent of another child at the school that Luciana had reportedly told

8

that child about her grandfather's abuse. Silva explained that she spoke to Luciana, she had Luciana play with some sand and toy figurines. After Luciana relaxed and began talking about members of her family, Silva told Luciana that "someone told me what [you] had said about Grandpa." At that point, Silva said Luciana's eyes widened, and Luciana said: "My friend told you. I am so embarrassed." Silva explained that she reassured Luciana that she could trust her, and then Luciana told her: "It's true. I had s-e-x with my grandpa."

According to Silva, Luciana told her what Guevara did to her when she was five or six-years old when her parents weren't home. Silva testified Luciana told her that Guevara "put his thing in her private part" when they were in his bedroom. Luciana also told Silva that Guevara "would do it a lot" even though Luciana told "him to stop[.]" On cross-examination, Silva agreed that on occasion she had seen children lie to get someone else into trouble. Silva also agreed there's "no ironclad way to tell whether that's what they are doing[.]"

The same day Luciana told Silva that Guevara had sexually abused her, she spoke to Detective Cecil Arnold, an employee of the City of Pearland Police Department about the alleged sexual abuse. During the

9

trial, Detective Arnold testified that Luciana decided to tell others about Guevara's sexual abuse because she told one of her friends and her friend encouraged her to tell an adult. Detective Arnold testified that when he interviewed Luciana, she told him she had "s-e-x with [her] grandpa." And he stated she told him these incidents occurred when she was five or six years old.

Detective Arnold also discussed what Luciana told him about the details of the sexual abuse. For example, the detective explained that Luciana described "sex' as "[Guevara's] front private part in her front and back private part." Detective Arnold also said Luciana told him "she felt [Guevara's] front private part was hard and as she was being penetrated that it hurt her and she would ask him to stop." When Detective Arnold asked her what functions her back and front private parts have, he said she told him her "pee" came from her front private part and "she uses her back private part to go poo."

Detective Arnold said he asked Luciana whether anything else happened, and "[s]he brought up oral." Luciana described additional details about the oral sex to the detective too, according to Detective Arnold, as he testified that Luciana told him Guevara had asked her to

10

lick his private part and that she complied, licking what Luciana called Guevara's "front private part." According to the detective, Luciana also told him "her grandfather told her to go get some chocolate syrup and bring it back and that the chocolate syrup was put on [Guevara's] front private part for her to lick off."

Detective Arnold's interview with Luciana provided details about other acts of sex relevant to the counts in the indictment not yet discussed. For instance, Detective Arnold testified Luciana "described an incident where [Guevara] was putting his mouth onto her breast and she used the word nipples" during the interview. He also said Luciana told him that sometimes Guevara "would take her hand and put it on his front private part," which the detective explained Luciana understood to be Guevara's penis. Luciana also told the detective "her grandpa would get a towel or a rag and, quote, wipe her front private part." As to how often these incidents occurred, Detective Arnold testified Luciana told him they occurred "every day or every time that her parents were out shopping[.]"

Detective Arnold explained that after he completed Luciana's interview, he spoke to Guevara at his home. In that interview, Detective

11

Arnold said he thought Guevara seemed "[v]ery laid back." Detective Arnold also testified that when he spoke to Guevara, Guevara laughed after being informed about what Luciana told the detective what she was claiming Guevara had done. According to Detective Arnold, after he told Guevara about Luciana's allegations, Guevara said: "[T]he only time he would have ever touched her private part would be during a bathing time." Detective Arnold testified that Guevara told him that he often gave Luciana her baths.

On October 9, 2019, Luciana was examined by Angie Chacko, a sexual assault nurse. When Chacko testified, she explained she asks her patients broad questions. In Luciana's case, she testified she asked, "has anyone ever touched you or did something to you that made you feel weird or uncomfortable?" According to Chacko, Luciana responded: "Oh, yeah, my grandpa." Chacko explained that during Luciana's examination, Luciana told her that Guevara

> would take his 'front private,' and patient points to genitalia, 'and put it in my front and back private.' Patient points to front genitalia and anus. 'And he would touch my front private.'

Luciana also told Chacko about an incident when she (Luciana) put her mouth on Guevara's penis. Luciana described that incident

12

(according to Chacko) as involving the use of chocolate syrup. Chacko also testified that Luciana told her that Guevara "put his tongue in my front private part." As to the part of the body Luciana was describing when she referred to a person's front private part, Chacko testified that Luciana pointed to the correct area of a person's body when she asked her what she was talking about, the part consistent with a male or a female's sexual organ. And Chacko stated that Luciana pointed to her bottom when she was talking about her back private part, which Chacko clarified was Luciana's anus.

Chacko's history about when the sexual abuse occurred also fits with what Luciana told Silva and Detective Arnold. Luciana told Chacko that Guevara abused her when she was five or six years old. Luciana also told Chacko Guevara sexually abused her when she was in kindergarten. Chacko examined Luciana, but Chacko found no objective evidence in the exam to suggest Luciana had suffered a physical injury from the alleged abuse.

The testimony of the three remaining witnesses addressed the evidence of the extraneous offenses that are the subject of Guevara's second issue, incidents involving sexual abuse of minors that allegedly

13

occurred in 1983 and 2004. Only the 1983 offense led to Guevara's indictment, and that indictment was dismissed. The evidence in Guevara's trial, however, does not show the reason the indictment was dismissed.

*Olivia* testified about an extraneous offense that she claimed occurred in 1983. Olivia was fifty three years old when she testified in Guevara's trial. Olivia testified about what she claimed Guevara did to her in 1983 when she was fifteen years old. According to Olivia, in January 1983 while she was babysitting at her aunt's home, she was in a loft bedroom, upstairs and by herself when Guevara (her uncle) came upstairs and sat on the couch. According to Olivia, the next thing she knew she was on the floor on her back. Then, Olivia continued, Guevara covered her mouth with his hand, pulled the shorts she was wearing to the side, and inserted his penis in her sexual organ. Olivia testified that when Guevara finished, he told her to "go clean up." Olivia explained that when she went to the bathroom, she noticed Guevara had ejaculated. The next morning, Guevara took her home and gave her $20 for babysitting. Olivia agreed that when she got home, she didn't tell anyone about what

14

Guevara did to her, excusing her failure to say anything to her parents because she said she "was scared."

Olivia explained that about five months after Guevara raped her, her stomach "just started getting bigger." She told her brother's girlfriend what Guevara had done and after that, her brother found out. When he told her mother, the police were called to investigate. According to Olivia, the "family was very divided at the time." Explaining why the family was divided, Olivia testified that some members of her family called her a "mentirosa, which is a liar." Olivia had a baby in September 1983, a baby she testified that Guevara fathered. But according to Olivia, her mother told her "she couldn't raise his – [Guevara's] child and be – have [Guevara's] child running around with his other kids and all the family." Olivia explained she never got to see her baby and didn't get to keep her; instead, Olivia explained "they took [the baby] away" to a family who adopted the child.

At trial, Olivia agreed she knows where her daughter now lives. According to Olivia, her daughter contacted her in 2009. Olivia testified that occasionally, the two of them "speak." As to other sexual relationships Olivia had with other men around January 1983, Olivia

15

explained she had sex in the summer of 1982 with her boyfriend. But Olivia denied she and that boyfriend were still together by January 1983. According to Olivia, in January 1983 she had a different boyfriend, a boy with whom she had not slept.

The evidence about Guevara's other extrinsic offenses related to two unindicted offenses he allegedly committed in 2004 against his then seven-year-old granddaughter, *Luisa*. At trial, Luisa testified about two specific acts she said Guevara committed against her in 2004. In one, she said she was walking by a couch when Guevara grabbed her, put her on his lap, reached in her pants, and touched her skin but touched her above her sexual organ. She said that when that incident occurred, Guevara didn't say anything and she "just grabbed him and tried to get it out and then ran upstairs."

In the other incident, Luisa testified that Guevara came in his bedroom while she and her siblings were playing on his bed. When Guevara sat on the bed, Luisa explained she was afraid he might try to "grab" her and "touch" her, so she tried to avoid him by hopping away beyond his reach. But Luisa told the jury that Guevara "tackled [her] and

reached his hand in [her] pants[.]" Luisa testified Guevara's hand touched her "vagina" after he put his hands in her pants.

Luisa also told the jury that she told her cousin what happened to her that day. Then, according to Luisa, her nine year old cousin told her mother. After her parents found out, Luisa said her family took her to the police station, where they told the police what she told them Guevara had done. But to Luisa's recollection, said she didn't remember speaking to a police officer that day. Instead, Luisa said she remembered sitting on her father's lap and the officers telling her parents that, "in time she'll forget about it." According to Luisa, until Detective Arnold took her statement in Luciana's case, the investigation the police conducted into what happened in 2004 didn't go anywhere.

Luisa's mother, *Sara,* testified that, after Luisa's cousin told her Sara was crying, she went to the room where Luisa was to see what was wrong. Sara told the jury that Luisa "told me about the incident that happened with her grandfather[,]" explaining that Luisa told her about the incidents that occurred on the couch and in the bedroom. According to Sara, these incidents both occurred in April 2004. Sara's account about what Luisa told her largely tracks Luisa's, except Sara didn't testify (and

wasn't asked) whether Luisa told her exactly where Guevara's hand contacted Luisa's body in either of the incidents that Luisa described. Sara also testified the day or two after Luisa told her about what Guevara did to her on the bed, she took Luisa to a therapist. Sara also told the jury that before testifying in court that day, she had not appeared in court to testify about what happened to Luisa in April 2004. Sara also explained she has always wondered why the police didn't follow up on the report that she and her husband filed about what Luisa told them Guevara had done.

At the end of the guilt-innocence phase of the trial, the jury found Guevara guilty on four counts of the indictment—counts two and three, which charged Guevara with sexually assaulting Luciana, a child; count five, which charged Guevara with touching Luciana's breast; and count six, which charged Guevara with causing Luciana to touch his genitals.

There was no dispute at trial and there is no dispute in the appeal that during the period relevant to Guevara's indictment—June 30, 2016, until November 19, 2019—Luciana was a *child* as that term is defined by

the Penal Code.[5] With respect to counts two and three, the counts charging Guevara with the offense of aggravated sexual assault of a child, the State needed to prove the defendant intentionally or knowingly:

> (ii) cause[d] the sexual organ of a child to contact or penetrate the mouth . . . of another person, including the actor[—as to count two];
> (iii)cause[d] the penetration of the mouth of another person by the sexual organ of the actor[—[as to count three].[6]

As for counts five and six—the counts charging Guevara with the offense of indecency with a child by contact—Penal Code Section 21.11(a) required the State to prove that Guevara "engage[d] in sexual contact with [Luciana] or cause[d Luciana] to engage in *sexual contact*" with the intent to arouse or gratify the sexual desire of any person regardless of whether he knew Luciana's age.[7] Under Penal Code Section 21.11(c), *sexual contact* is defined as follows:

> (c) In this section, 'sexual contact' means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person:

---

[5]Tex. Penal Code Ann. § 22.011(c) (for the offense of sexual assault, defining *child* to mean "a person younger than 17 years of age"); *id.* § 22.021(b) (for the offense of aggravated sexual assault, defining *child* as having "the meaning assigned by Section 22.011(c)").

[6]*Id.* § 22.021(a)(1)(B)(ii), (iii), (a)(2)(B).

[7]*Id.* § 21.11(a).

(1) any touching by a person, including touching through the clothing, of the anus, breast, or any part of the genitals of a child,

(2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person.[8]

## Issues

Guevara raises two issues in his appeal, one complaining about the sufficiency of the evidence supporting his four convictions and the other complaining of the trial court's ruling admitting evidence that shows Guevara engaged in other sexual misconduct with Olivia and Luisa, children when the conduct that they described in the trial occurred. Guevara frames his issues as follows:

(1) The Evidence Was Insufficient To Support Appellant's Convictions For Aggravated Sexual Assault Of A Child and Indecency With A Child By Contact[; and]

(2) The Trial Court Erred by Allowing Evidence Of Extraneous Offenses.

## Standard of Review

When reviewing the evidence supporting a defendant's conviction, we view it in the light favoring the verdict the jury reached.[9] In our

---

[8] *Id*. § 21.11(c).

[9] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

review, the question is not whether we believe the witnesses; instead, the question is whether, after viewing the evidence in the light favoring the prosecution, "a rational juror could have found the essential elements of the crime beyond a reasonable doubt."[10]

"Our review of 'all the evidence' includes evidence that was properly and improperly admitted."[11] If the record supports conflicting inferences, we still must presume the jurors resolved any conflicts in a manner that favors the jury's verdict, and we must defer to the verdict it reached in the trial.[12] When deliberating on its verdict, the jury may rely on direct or on circumstantial evidence to establish the defendant's guilt as both have equal probative value.[13] In trials to juries, the jury is the ultimate authority in deciding which witnesses were credible and in deciding the weight to assign to the testimony.[14] As a reviewing court, we "must give deference to 'the responsibility of the trier of fact to fairly resolve conflicts

---

[10]*Queeman*, 520 S.W.3d at 622 (quoting *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013)).

[11]*Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (cleaned up).

[12]*Brooks v. State*, 323 S.W.3d 893, 899 n.13 (Tex. Crim. App. 2010); *Clayton*, 235 S.W.3d at 778.

[13]*Clayton*, 235 S.W.3d at 778.

[14]*Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981).

in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'"[15] Also, each fact need not point directly to the defendant's guilt; "it is enough if the [jury's] conclusion is warranted by the combined and cumulative force of all the incriminating circumstances."[16]

Analysis

Guevara argues the evidence doesn't support his convictions because: (1) he denied Luciana's allegations when Detective Arnold spoke to him about what Luciana told him Guevara had done; (2) Luciana waited two years before reporting the sexual abuse to any adults; and (3) the jury returned verdicts acquitting him on two of the six counts of the indictment—the counts alleging he sexually abused Luciana by penetrating her sexual organ and the count alleging he penetrated her anus.

As for the counts on which the jury returned convictions, count two of the indictment required the State to prove that Guevara intentionally

---

[15]*Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 118-19).

[16]*Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

or knowingly caused Luciana's sexual organ to contact his mouth.[17] At trial, Luciana testified that Guevara touched her front "private" with his tongue. Nurse Chacko testified that when she questioned Luciana about what parts of Guevara's body touched Luciana's body, Luciana told her: "Oh, yea, he would put his tongue in my front private part."

There was also testimony that allowed the jury to reasonably conclude that when Luciana used the term *front private part*, she was referring to her sexual organ. Detective Arnold testified that when he asked Luciana about the functions of her front private part, she told him the front was "where she pees from."

Luciana's testimony alone allowed the jury to find Guevara guilty. Under Article 38.07 of the Texas Code of Criminal Procedure, when the victim is seventeen or younger and even when the sexual offense of aggravated sexual assault is not reported within a year, Texas law provides that a conviction for aggravated sexual assault of a child "is supportable on the uncorroborated testimony of the victim of the sexual offense[.]"[18]

---

[17]*See* Tex. Penal Code Ann. § 22.021(a)(1)(B)(iii).
[18]Tex. Code Crim. Proc. Ann. art. 38.07(a)(b)(1).

To be sure, Guevara like most defendants accused of sexually assaulting a child didn't admit he sexually abused Luciana when confronted with the allegations of the abuse. Guevara points to Luciana's delay in reporting his sexual misconduct to an adult to cast doubt on whether the jury should have believed her. And we must concede the record shows the first adult Luciana told of the abuse was her school counselor, a delay of over a year when considering the first time Luciana claimed Guevara engaged in the sexual misconduct she described in the trial. Still, Luciana also testified that she didn't tell her parents or anyone about what Guevara did to her because Guevara asked her to keep it a secret. And it's so well known that it would have been within the jury's common knowledge that the cognitive skills of a child Luciana's age would not have been developed like that of an adult or even an older child.[19] Thus, it wouldn't have been irrational for the jury to have

---

[19]*See Edwards v. State*, No. PD-0585-21, 2023 Tex. Crim. App. LEXIS 98, *6 (Tex. Crim. App. Feb. 15, 2023) (explaining "the jury may use common sense, common knowledge, personal experience, and observations from life when drawing inferences"); *Booker v. State*, 929 S.W.2d 57, 60 (Tex. App.—Beaumont 1996, pet. ref'd) (explaining "the jury may use common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence").

concluded that Luciana—a five to six-year-old child when the abuse occurred—would have chosen not to report her grandfather for the conduct based on her age and lack of perspective about what was right and wrong together with the right the jury had to credit Luciana's testimony that she stayed silent for over a year because she was complying with what her grandfather asked her to do.

So essentially Guevara simply wants this Court to reach a verdict different than the one the jury reached in his trial by making an assessment of the evidence that differs from that of the jury. As the trier of fact, however, it was the jury's responsibility to fairly resolve the conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the evidence in reaching its verdict.[20] Simply put, as an appellate court it is not our role to decide whether a witness in a trial was a credible witness and then assign a different weight to that witness's testimony when the jury's verdict from the evidence it heard is reasonable.[21]

---

[20] *See Jackson*, 443 U.S. at 318-19.
[21] *Penagraph*, 623 S.W.2d at 343.

Guevara also argues the evidence must be insufficient to support the jury's verdict on the four counts on which it found him guilty since it acquitted him on two of the counts, the counts alleging he penetrated Luciana's sexual organ and penetrated her anus. According to Guevara, the jury's decision to acquit him on these two counts but to convict him on the other four "casts serious doubt" on her claims that she was sexually abused. Although Guevara doesn't expressly state his argument in these words, his claim is that the jury's verdicts on counts one and four conflict with counts two, three, five and six.

First, we disagree that the differences between the jury's finding on the counts cannot be rationally explained. Even though we need not provide Guevara with an explanation, we can see why a rational jury based on the testimony would have chosen to acquit him on counts one and four.

The jury heard Nurse Chacko testify that when she examined Luciana, she didn't find anything she could definitely associate with trauma. And since Luciana was five or six years old when the alleged events she described occurred, the jury could have rationally determined that she either did not understand or was unable to distinguish between

penetration and attempted penetration to the degree expected of an adult.[22] So even though Luciana testified that she felt pain and that from her perspective (as a child) Guevara put his private part in her front and back private parts, the jury acting rationally could have decided that Luciana was mistaken about whether penetration of her sexual organ and anus occurred.

Even so, no matter how the jury reached its decision as to the counts on which it acquitted Guevara, to affirm Guevara's convictions we need not speculate about why the jury might have chosen to convict him on some counts but to acquit him on others. We need not do so because in measuring whether the evidence is sufficient to support a defendant's conviction, the conviction on "each count must stand or fall on its own[.]"[23]

That the standard requires the evidence on each conviction to be examined separately is long established blackletter law. In rejecting a sufficiency challenge based on the defendant's argument that the jury reached inconsistent verdicts on different counts of a multiple-count

---

[22]*See Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990).
[23]*Hernandez v. State*, 556 S.W.3d 325, 331 (Tex. Crim. App. 2018) (opinion on rehearing).

indictment, the United States Supreme Court explained the differences in the verdicts on a multiple-count indictment "may have been the result of compromise, or of a mistake on the part of the jury. . . . But verdicts cannot be upset by speculation or inquiry into such matters."[24] Relying on *Dunn*, our own Court of Criminal Appeals has held that "if a defendant is acquitted of one count and convicted of another based on the same evidence in a single trial, the defendant cannot rely on the inconsistent verdicts to attack [his] conviction."[25]

Essentially, Guevara wants this Court to become a thirteenth juror and substitute our judgment for that of the jury. Even so, that's not our role.[26] After reviewing the evidence and viewing it in the light favorable to the verdict, we conclude the jury acted rationally in finding Guevara guilty under count two of the indictment of the offense of aggravated sexual assault of a child, as the evidence supports its conclusion that he caused Luciana's sexual organ to contact his mouth.

Under count three of the indictment, the State had to prove that Guevara knowingly or intentionally penetrated Luciana's mouth with his

---

[24]*Dunn v. U. S.*, 284 U.S. 390, 394 (1932).
[25]*See Hernandez*, 556 S.W.3d at 331.
[26]*See Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

28

sexual organ to prove Guevara was guilty of the offense of aggravated sexual assault of a child.[27] In his trial, Luciana testified that Guevara made her put "his private part" in her mouth. She testified that when he did so, she "didn't like it[,]" and she "thought it was disgusting." Since Luciana was a child when the offense occurred, her testimony alone supports his conviction since the jury had the right to believe her testimony in its role as the finder of the facts.[28] Measuring the evidence the jury heard on count three in the light most favorable to the prosecution, we conclude a rational jury could have found that Guevara knowingly or intentionally penetrated Luciana's mouth with his sexual organ.[29]

Count five of the indictment required the State to prove that Guevara engaged in sexual contact with Luciana by touching Luciana's breast with the intent to arouse or gratify his sexual desire.[30] Count six of the indictment required the State to prove that Guevara knowingly or

---

[27]Tex. Penal Code Ann. § 22.021(a)(1)(B)(ii).

[28]Tex. Code Crim. Proc. Ann. art. 38.07(a)(b)(1); *see Brooks*, 323 S.W.3d at 899 n.13; *Clayton*, 235 S.W.3d at 778.

[29]*See Hernandez*, 556 S.W.3d at 331; Tex. Penal Code Ann. § 22.021(a)(1)(B)(ii).

[30]Tex. Penal Code Ann. § 21.11(a)(1), (c)(1).

intentionally caused Luciana to touch his genitals with the intent to arouse or gratify his sexual desire.[31]

Turning to the testimony supporting count five, the jury heard Luciana testify that Guevara touched her chest with his hands. And it heard Detective Arnold testify that during Luciana's interview, she "described an incident where [Guevara] was putting his mouth onto her breast and she used the word nipples[.]" Thus, since we must assume the jury credited this testimony, we conclude that the jury, acting rationally, could have found Guevara guilty of the allegations in count five of the indictment.[32]

Next, we turn to the testimony supporting Guevara's conviction under count six, which charges Guevara with indecency with a child by contact based on Luciana's contact with Guevara's genitals. At trial, the jury heard Luciana testify that Guevara had her put chocolate syrup on his penis. When she was asked what Guevara made her do with her hands, she testified he "made me touch his private." The jury also heard Detective Arnold testify that when he interviewed Luciana, she told him

---

[31]*Id.* § 21.11(a)(1), (c)(2).
[32]*Id.* § 21.11(a)(1).

"her grandfather would take her hand and put it on his front private part[,]" a reference Luciana used to describe Guevara's penis. And the detective told the jury that when Luciana was "talking about her hand being put on his penis[,] she would move her hand back and forth."

In evaluating Luciana's testimony, it was up to the jury to decide whether the inconsistencies between the accounts Luciana gave the jury at trial and the accounts she told adults in earlier interviews were sufficient to make the jury believe she was not credible or that she was mistaken about what occurred. That said, the details Luciana provided about the incident of touching Guevara's genitals—one that included Guevara's use of chocolate syrup—allowed a rationale jury to decide that Guevara made Luciana touch his genitals with her hands while intending to arouse or gratify his sexual desire when she was a child. As mentioned, it was up to the jury to decide which witnesses were credible and to decide how to weigh their testimony.[33]

For all the reasons explained above, we conclude the evidence allowed a rational jury to conclude that Guevara was guilty under counts two and three, the two counts charging Guevara with aggravated sexual

---

[33] *See Penagraph*, 623 S.W.2d at 343.

assault of a child. We further conclude the evidence supports Guevara's convictions under counts five and six of the indictment, the counts charging him with indecency with a child. For these reasons, we overrule Guevara's first issue.

Evidence of Other Crimes, Wrongs, or Acts

In Guevara's second issue, he complains the trial court erred in allowing the jury to hear testimony by witnesses about Guevara's other alleged crimes, wrongs, or acts "because their testimony was not adequate to support a finding by the jury that [Guevara] committed the offense of indecency With a Child against [Luisa] and Aggravated Sexual Assault Of A Child against [Olivia] beyond a reasonable doubt as required by Article 38.37 of the Texas Code of Criminal Procedure."[34] In issue two, Guevara complains about the trial court's admission of the testimony of four witnesses—Olivia, Luisa, Sara, and Detective Arnold. In addition to arguing the evidence was inadmissible because the State

---

[34]Tex. Code Crim. Proc. Ann. art. 38.37, § 2-a. (West 2018 and West Supp. 2022). Although the Legislature amended Article 38.37 after Guevara committed the offenses made the subject of his six-count indictment, none of the changes made to the Article are relevant to the issues Guevara has raised in his appeal. For that reason, we cite the current version of the Article when referring to it in the opinion.

32

failed to present sufficient evidence to allow the jury to find he committed the extraneous offenses beyond reasonable doubt, Guevara argues that Olivia's testimony about the alleged rape was more prejudicial than probative to proving his character given the remoteness a crime committed in 1983 in proving a defendant's propensity to commit crimes alleged to have occurred over thirty years later.

At trial, Olivia testified that Guevara raped her in 1983 when she was fifteen years old. Luisa testified that Guevara put his hand down her pants twice in 2004 when she was seven years old. Sara, Luisa's mother, testified that Luisa told her about what Guevara did to her in 2004, and she testified she reported Guevara's misconduct to the police. Detective Arnold testified he investigated the incident involving Luisa after it was reported to the Pearland Police Department, took statements from Luisa's parents, and attended an interview that Luisa gave at the Children's Assessment Center. He then explained that based on the laws available in Texas in 2004 and based on his investigation, the police decided there wasn't a crime with which Guevara could be charged so the case was closed.

We determine whether a trial court erred in admitting evidence of other crimes, wrongs, or acts under an abuse of discretion standard.[35] "As long as the trial court's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld."[36] Generally, when challenged on appeal, rulings admitting evidence of extraneous offenses will be found to fall within the zone of reasonable disagreement if "the evidence shows that 1) an extraneous transaction is relevant to a material, non-propensity issue, and 2) the probative value of the evidence is not outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."[37]

The trial court conducted two hearings outside the presence of the jury before allowing any witnesses to testify about any extraneous crimes, wrongs, or bad acts. Olivia, Luisa, and Sara testified in the first hearing. Detective Arnold testified in the other. As to the extraneous crimes, wrongs, or acts discussed in the first hearing—the 1983 rape and

---

[35] *Prible v. State,* 175 S.W.3d 724, 731 (Tex. Crim. App. 2005); *Santellan v. State,* 939 S.W.2d 155, 169 (Tex. Crim. App. 1997).
[36] *De La Paz v. State,* 279 S.W.3d 336, 342-43 (Tex. Crim. App. 2009).
[37] *Id.* at 344.

34

the 2004 incidents involving Luisa—Guevara's attorney made one objection. He argued the testimony about these extraneous acts shouldn't have been admitted because none of the witnesses could remember how the reports made to the police were ultimately resolved and based on what the witness said happened the jury "can't possibly get beyond reasonable doubt." As to Detective Arnold's testimony, Guevara's attorney stated he had "no objection" to the detective's testimony when the Article 38.37 hearing ended.

When the extraneous offense is one of the offenses listed in subsections (a)(1) and (b) of section 2(b) of the statute, Article 38.37 § 2(b) allows trial courts to admit evidence of a defendant's commission of the extraneous wrong, crime, or act against a child "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant."[38] But before allowing the jury to hear the evidence, the trial court must conduct a hearing outside the jury's presence to "determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense

---

[38]*Id*. art. 38.37, § 2(a)(1), (b). Tex. R. Evid. 404.

beyond a reasonable doubt."[39] If the evidence is admissible under Article 38.37, the statute makes it admissible "[n]otwithstanding Rules 404 and 405, Texas Rules of Evidence[,]" two rules that when Article 38.37 does not apply often prevent juries from hearing evidence that a defendant committed an extraneous crime, wrong, or act.[40]

The counts on which Guevara was tried included counts charging him with aggravated sexual assault of a child and indecency with a child. Before the trial court decided whether to admit the evidence addressing Guevara's extraneous offenses, the court conducted the required Article 38.37 hearing without the jury being present.[41] The evidence the trial court considered in the hearing included testimony by Olivia and Luisa, both eyewitnesses to the respective extraneous offenses. At the end of the hearing, the trial court found the "evidence likely to be admitted at trial will be adequate to support a finding by the jury that [Guevara] committed the separate offenses beyond a reasonable doubt[.]"

As to the 2003 offense involving Olivia, the State's theory was that the testimony about the 1983 offense against Olivia was admissible to

---

[39]*Id.* art. 38.37, § 2-a.
[40]*Id.* art. 38.37, § 2(b); Tex. R. Evid. 404, 405.
[41]Tex. Code Crim. Proc. Ann. art. 38.37, § 2-a(1).

36

show Guevara's character and to show the acts he committed against Luciana fit with Guevara's character.[42] From Olivia's description of what Guevara did to her in January 1983, the State could have charged Guevara with the offense of rape of a child under the then existing version of the Penal Code, which applied to the offense Olivia described.[43] To prove rape of a child under the 1983 Penal Code, the State had to prove the defendant had sexual intercourse with a female, not his wife, when the female was younger than seventeen years old.[44] Today, section 22.021(a)(1)(B) of the Penal Code, which defines the crime of aggravated sexual assault of a child, is the functional equivalent of rape of a child as that offense is described by the 1983 version of the Penal Code.[45] Thus, assuming the evidence is relevant proving "the character of the defendant and acts performed in conformity with the character of the defendant[,]" to prove Guevara committed the extraneous crime of rape of a child under

---

[42]Tex. Code Crim. Proc. Ann. art. 38.37, § 2(b).

[43]Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 21.09, 1973 Tex. Gen. Laws 883, 917-18 (current version at Tex. Penal Code Ann. § 22.021(a)(1)(B) (defining the offense of aggravated sexual assault of a child)).

[44]*Id.*

[45]*Compare* Tex. Penal Code Ann. § 22.021(a), *with* Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 21.09, 1973 Tex. Gen. Laws at 917-18.

the 1983 Penal Code, the State needed to present evidence sufficient to allow the jury to find that Guevara raped Olivia a child who was not his wife to justify the trial court ruling admitting the testimony about that extraneous offense into the evidence in the case at issue in this appeal.[46]

Guevara's claims the State didn't present sufficient evidence to meet its Article 38.37 burden in the hearing to prove the evidence about Olivia's rape was admissible. We disagree. During the hearing, the trial court heard Olivia testify that she was fifteen years old when Guevara raped her in 1983. The trial court heard Olivia testify that she didn't consent to the sex—specifically, Olivia testified that when Guevara pulled her down on the floor and got on top of her while holding her arm behind her back, she "kept saying no, no, no, no." While Guevara had her on the floor, Olivia told the trial court that he had "his hand over her mouth." During the hearing, Olivia also testified that she and Guevara were never married.

On appeal, Guevara argues that Olivia wasn't a credible witness. He points to the fact that Olivia didn't report she was raped until May 1983, after it was obvious she was pregnant. He also complains the State

---

[46]Tex. Code Crim. Proc. Ann. art. 38.37, § 2(b).

failed to prove that the child Olivia testified she gave birth to in September 1983 was his child based on a paternity test. And Guevara suggests the State failed to exclude the possibility that the child Olivia gave birth to in 1983 was fathered by her boyfriend, a boyfriend Olivia admitted having in January 1983. Olivia, however, testified during the Article 38.37 hearing that she and the boyfriend she had in January 1983 never had sex. And even though a paternity test would have proven beyond question whether Guevara fathered Olivia's child, the fact no test was presented by either party doesn't show that the jury could not have reasonably chosen to believe Olivia's testimony that Guevara raped her.

When a party wants to offer evidence of an extraneous crime, wrong or act, the trial court must first determine outside the jury's presence whether the testimony about the offense would likely allow the jury to find beyond reasonable doubt that the "defendant committed the separate offense[.]"[47] Rule 104(b) of the Texas Rules of Evidence provides the guiding rule trial courts must follow when the relevancy of the evidence depends on fulfilling a preliminary condition of fact.[48] To decide

---

[47]Tex. Code Crim. Proc. Ann. art. 38.37 § 2-a(1).
[48]Tex. R. Evid. 104(b); *Montgomery v. State*, 810 S.W.2d 372, 376 n. 4 (Tex. Crim. App. 1990) (citing *Huddleston v. U. S.*, 485 U.S. 681 (1988)

whether the State has introduced sufficient evidence to meet a preliminary condition under Rule 104(b)—which in Guevara's case was does the evidence in the Article 38.37 hearing show the evidence likely to be admitted at trial would be adequate to support the jury's finding that the defendant committed the separate offense beyond reasonable doubt— "the trial court neither weighs credibility nor makes a finding that the [State] has proved the conditional fact[.]"[49] Instead, the court acts as a gatekeeper, examines the evidence introduced in the hearing, and decides whether the evidence, if admitted before the jury, would support the jury's finding of the conditional fact.[50]

With exceptions that do not apply here, the general rule is that the testimony of an eyewitness alone is sufficient to support a defendant's conviction.[51] The trial court knew that when Olivia testified before the

---

for the proposition that "Rule 104(b) applies to all preliminary issues of relevancy including the admission of extraneous offenses under Tex. R. Evid. 404(b).").

[49]*See Huddleston*, 485 U.S. at 690; Tex. Code Crim. Proc. Ann. art. 38.37 § 2-a(1).

[50]*Id.*

[51]*Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); *Price v. State*, 502 S.W.3d 278, 281 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Vernon v. State*, 571 S.W.3d 814, 820 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd); *Smith v. State*, 421 S.W.3d 161, 164 (Tex. App.— San Antonio 2013, no pet.); *Thomas v. State*, No. 09-12-00458-CR, 2013

jury, the jury could observe her demeanor and in its role as the factfinder reconcile any discrepancies in her testimony—discrepancies such as whether she was being truthful about sleeping with the boyfriend in January 1983 and whether the child she claimed Guevara fathered was his child.[52] We conclude the trial court did not abuse its discretion in allowing Olivia to testify about the 1983 rape. Olivia's testimony, if the jury as the factfinder chose to believe it, offers reasonable support for a finding under a standard of proof beyond reasonable doubt that Guevara raped Olivia, a female not his wife, when Olivia was younger than seventeen years old.[53]

For similar reasons, we conclude the trial court didn't abuse its discretion by concluding that if the jury chose to believe Luisa's testimony, her testimony would reasonably support the jury's conclusion that Guevara engaged in the two extraneous crimes, wrongs, or acts that she described—indecency with a child by contact and attempted

---

Tex. App. LEXIS 11765, at *3 (Tex. App.—Beaumont Sept. 18, 2013, pet. ref'd) (mem. op., not designated for publication).

[52]*See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

[53]Tex. R. Evid. 104(b); Tex. Code Crim. Proc. Ann. art. 38.37, § 2-a.(1).

indecency with a child by contact.[54] As discussed, with exceptions not applicable here, the testimony of a single eyewitness can support a defendant's conviction.[55] During the Article 38.37 hearing, Luisa testified that on one occasion, when she was walking by the couch, Guevara grabbed her hand, pulled her onto his lap, and slipped his hand in her pants. Luisa testified she grabbed his hand and stopped him before he touched her sexual organ. According to Luisa, on another occasion, she was playing with her siblings in Guevara's bedroom when Guevara tackled her, put his hands down her pants, and touched her sexual organ.

According to Luisa, the conduct she described occurred in 2004 when she was seven years old. While the section of the Penal Code that describes the elements the State must prove to convict a defendant of indecency with a child has been amended since 2004, the changes the legislature made to the statute are not relevant to Guevara's appeal.[56] Previously, we discussed the elements the State must prove to convict a

---

[54]Tex. Penal Code Ann. § 21.11(a)(1).
[55]*Aguilar*, 468 S.W.2d at 77.
[56]*Compare* Act of May 23, 2001, 77th Leg., R.S., ch. 739, § 3, 1973 Tex. Gen. Laws 1463-64, *with* Tex. Penal Code Ann. § 22.11 (Indecency With a Child).

defendant of the offense of indecency with a child by contact.[57] To convict the defendant of the offense of attempted indecency with a child by contact, the State must prove the defendant, with the specific intent to commit the offense of indecency with a child by contact, did an act amounting to more than mere preparation that tends but fails to effect the commission of the offense.[58]

When Luisa testified in the trial, the trial court knew that the jury could observe her demeanor and as the factfinder had the right to resolve any discrepancies in her testimony.[59] It was proper for the trial court to leave the credibility decisions about what Luisa claimed occurred up to the jury, since as the gatekeeper in the Article 38.37 hearing it was not the trial court's role to weigh Luisa's credibility.[60] We conclude the trial court did not abuse its discretion by concluding that, should the jury choose to believe Luisa's testimony, her testimony would reasonably support findings by the jury that Guevara touched Luisa's sexual organ and that he attempted to touch her sexual organ based on her testimony

---

[57]Tex. Penal Code Ann. 21.11(a)(1).
[58]*Id*. § 15.01(a); *id*. § 21.11(a).
[59]*See Chambers*, 805 S.W.2d at 461.
[60]*See Huddleston*, 485 U.S. at 690; Tex. R. Evid. 104(b).

about the two incidents she described.[61] And when considering the testimony as a whole, the jury could also reasonably conclude both of the incidents Luisa described occurred with the intent to arouse or gratify Guevara's sexual desire.[62]

Last, Guevara argues that he "objected to the admission of these extraneous offenses because their prejudicial effect would outweigh their probative value under rule 403 of the Texas Rules of Evidence[.]" According to Guevara, he raised his Rule 403 objection to the evidence at volume 4, page 41 of the Reporter's Record during the Article 38.37 hearing. We disagree Guevara preserved his Rule 403 objection for the purpose of his appeal.

During the Article 38.37 hearing, Guevara made but one objection to the evidence of the extraneous crimes, wrongs, or acts the witnesses discussed—he claimed the evidence the State presented wouldn't allow the jury to "possibly get beyond reasonable doubt. So this stuff, I submit, is not proper – or not properly proven or developed extraneous items that should be included." When Olivia, Luisa, Sara, and Detective Arnold

---

[61]Tex. Penal Code Ann. § 21.11(a); Tex. Code Crim. Proc. Ann. art. 38.37, § 2-a.(1).
[62]*Id.*

44

testified before the jury, Guevara didn't object to their testimony about the extraneous offenses and claim it was not relevant or that it was prejudicial.[63]

To preserve an issue for appellate review, a party must lodge a timely objection, stating the specific basis for the objection.[64] Preservation is a "systemic requirement[,]" meaning that when an issue isn't "preserved for appeal, neither the court of appeals nor [the Court of Criminal Appeals] should address the merits of that issue."[65] "Ordinarily, a court of appeals should review preservation of error on its own motion[.]"[66] Once a trial court decides to admit the extraneous offense evidence under Article 38.37, it conducts a Rule 403 balancing test only "upon proper objection or request."[67] No such objection or request was made here. We conclude that the complaints Guevara raised in his brief claiming for the first time that the trial court's admission of the evidence

---

[63]Tex. R. Evid. 402, 403.
[64]Tex. R. App. P. 33.1(a)(1).
[65]*Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).
[66]*Id.* at 533.
[67]*Keller v. State*, 604 S.W.3d 214, 228 (Tex. App.—Dallas 2020, pet. ref'd) (emphasis in original) (quoting *Distefano v. State*, 532 S.W.3d 25, 31 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd)); *see also Montgomery*, 810 S.W.2d at 388-89.

about the extraneous crimes was more prejudicial than probative was not properly preserved for the purposes of his appeal.[68]

Conclusion

For the reasons explained above, Guevara's issues are overruled. The trial court's judgment is

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on October 14, 2022
Opinion Delivered April 12, 2023
Publish

Before Golemon, C.J., Horton and Wright, JJ.

---

[68]Tex. R. App. P. 33.1.