

NUMBER 13-22-00133-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI – EDINBURG

GUY WILLIAMS,                                                                                    Appellant,

v.

THE STATE OF TEXAS,                                                                           Appellee.

**On appeal from the County Court at Law No. 1
of Nueces County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria
Memorandum Opinion by Chief Justice Contreras**

On May 18, 2020, appellant Guy Williams was arrested for terroristic threat, a third-degree felony, and criminal trespass, a Class B misdemeanor. *See* TEX. PENAL CODE ANN. §§ 22.02(a)(6), 30.05. The State dismissed the charge of terroristic threat before trial. Because appellant is a former district judge in Nueces County, to avoid conflicts of

interest, a visiting judge was appointed to preside over the case and the Harris County District Attorney's Office prosecuted the case instead of the Nueces County District Attorney's Office. A jury convicted appellant for the offense of criminal trespass. *See id.* § 30.05. Appellant elected for the trial court to impose punishment, and it sentenced him to one year confinement in the Nueces County Jail, probated for ninety days. By three issues on appeal, appellant argues that: (1–2) there was insufficient evidence to support his conviction; and (3) the judgment is void because the visiting judge lacked judicial authority. Because we agree that the State failed to present sufficient evidence to support appellant's conviction for the offense as charged in the misdemeanor information, we reverse and render a judgment of acquittal.

## I.  BACKGROUND[1]

By complaint and information, the State charged appellant with "intentionally and knowingly enter[ing] and remain[ing] in a building of another, namely, the Nueces County Court House [sic] without the effective consent of Captain Robert Garza[,] Sergeant Dana Richardson[,] and Sergeant Andrew Carrizales, after having received notice to depart and failing to do so." *See id.* § 30.05(a)(2).

Trial commenced on January 3, 2022. Roberto B. Garza Jr., a former Nueces County Sherriff's Office (NCSO) captain, testified that around May 15, 2020, he met with the Nueces County District Attorney's Office for "a little briefing about some threats that had come [by] way of e-mail to Nueces County Judge, Barbara Canales." The purpose of the briefing was to provide law enforcement with "guidance and direction in how to handle"

---

[1] The State did not file a brief to assist us with the resolution of this appeal.

the alleged threats. When asked by the State from whom those threats originated, Garza answered, "From former District Judge, Guy Williams." According to Garza, appellant's e-mail stated "[s]omething about we're [going to] come in [to the courthouse] and we're [going to] . . . force our way through the courthouse." Garza noted his office "wanted to eliminate or prevent having to arrest anybody," but was directed to arrest appellant if he forced his way past the courthouse's security checkpoint.

According to Garza, appellant entered the Nueces County Courthouse on May 18, 2020, and attempted to enter a secured area without having passed through the security checkpoint. Garza and other officers warned appellant "that if he went beyond that point that he would be placed under arrest." Garza "recall[ed] specifically telling [appellant] . . . that he could go anywhere in the courthouse that he desired" if he first went through the security checkpoint. Body camera footage from multiple officers which corroborates Garza's testimony was admitted at trial. On cross-examination, appellant asked Garza whether he "ever t[old appellant], if you don't leave we're [going to] arrest you for criminal trespass?" Garza responded, "Not in that language, no."

Sergeant Marilyn King of the NCSO testified that on May 18, 2020, she was advised that the courthouse security area required extra protection given appellant's e-mail which "went out to . . . over a hundred attorneys, . . . urging that they bypass the security checkpoint." King stated that appellant entered the courthouse, attempted to pass the security checkpoint without getting screened, and was told he could not enter the secured zone without going through security or he would be arrested. Appellant ultimately walked into the secured area without having been inspected and positioned himself near

the courthouse's elevators. King testified that the officers "allowed [appellant] to get on the elevator where he was then placed under arrest." King believed appellant could have been arrested for criminal trespass from the moment he entered the secured area but stated that the officers waited to arrest appellant until he was in the elevator because it "is more of an isolated area to where [they] could control the situation more easily." After appellant was arrested, he was immediately brought to the NCSO for processing.

The State asked King if she notified appellant "to depart." King answered that appellant "was notified multiple times by multiple deputies to go through the checkpoint or he would be arrested." The State asked King whether "that notice to depart mean[t] going through the security checkpoint prior to entering the doors[ to the secured area]?" And King answered:

> Yes. That notice to depart would be going through the checkpoint . . . . Because to be in the courthouse you do not have to go through the checkpoint unless you're [going to] go past the double doors that lead to the elevators that lead you to the courtrooms, to the District Attorney's Office, to all of those secured areas. So not necessarily—it is to depart as in go through the checkpoint.

On cross-examination, appellant asked King, "Did you ever use the words, [appellant], you have to depart? You must depart or we're [going to] arrest you for criminal trespass?" King answered that she did not.

Sergeant Andrew Carrizales of the NCSO testified and largely echoed his colleagues' testimony. On cross-examination, the following colloquy took place:

| [Appellant]: | Do you think all of this could have been avoided if someone would have said, [appellant], if you don't leave we're going to arrest you for criminal trespass? |
|---|---|
| [Carrizales]: | I don't believe so. I believe— |

4

| [Appellant]: | Well, did anybody try it? |
|---|---|
| [Carrizales]: | No. |

The parties rested, the jury found appellant guilty, and the trial court sentenced appellant as noted above. Appellant filed a motion for new trial on February 3, 2022, which was overruled by operation of law. This appeal followed.

## II.    SUFFICIENCY OF THE EVIDENCE

By his first two issues, appellant contends that there was legally insufficient evidence to convict him of criminal trespass because: (1) "there was a fatal variance between the allegations in the information and the proof" at trial, in that Sergeant Dana Richardson, who was named in the information, did not testify; and (2) appellant was not given notice to depart the Nueces County Courthouse.[2] We begin by addressing the second issue because it is dispositive.

## A.    Standard of Review & Applicable Law

"In reviewing the sufficiency of the evidence to support a conviction, we consider the evidence 'in the light most favorable to the verdict' to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Delagarza v. State*, 635 S.W.3d 716, 723 (Tex. App.—Corpus Christi–Edinburg

---

[2] Rule 34.6 of the Texas Rules of Appellate Procedure governs the preparation of the reporter's record. *See* TEX. R. APP. P. 34.6. Under the rule, if an appellant raises a sufficiency of the evidence argument in a criminal case, "the record must include all the evidence admitted at the trial on the issue of guilt or innocence and punishment." *Id.* R. 34.6(c)(5); *see O'Neal v. State*, 826 S.W.2d 172, 173 (Tex. Crim. App. 1992) ("[A] defendant who wishes to raise a sufficiency issue on appeal has the burden of ensuring that the entire record of the trial before the fact finder is before the appellate court, and may not request a partial statement of facts . . . ."). Appellant requested a reporter's record comprising only the testimony of the three witnesses noted above. However, a review of the county court's "Notes from Case" entry shows that the three witnesses were the only witnesses to testify at trial, and the record included all the exhibits admitted at trial. We thus consider the record to be complete.

2021, pet. ref'd) (quoting *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020)); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence and are not mere speculation. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). "We resolve any evidentiary inconsistencies in favor of the verdict, keeping in mind that the factfinder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony." *Delagarza*, 635 S.W.3d at 723 (first citing *Walker v. State*, 594 S.W.3d 330, 335 (Tex. Crim. App. 2020); and then citing TEX. CODE CRIM. PROC. ANN. art. 38.04).

"The sufficiency of the evidence is measured by comparing the evidence produced at trial to 'the essential elements of the offense as defined by the hypothetically correct jury charge.'" *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

A person commits the offense of criminal trespass "if the person enters or remains on or in property of another, including . . . a building . . . , without effective consent and the person: (1) had notice that the entry was forbidden; or (2) received notice to depart but failed to do so." TEX. PENAL CODE ANN. § 30.05(a). "The offense of criminal trespass contains two statutory alternatives: (1) entry with notice that entry was forbidden and

6

(2) remaining after receiving notice to depart." *Munns v. State*, 412 S.W.3d 95, 98 n.2 (Tex. App.—Texarkana 2013, no pet.). "When a statute lays out several alternative methods of committing the offense, and the indictment alleges only one of those methods, 'the law as authorized by the indictment' is limited to the method specified in the indictment." *Geick v. State*, 349 S.W.3d 542, 545 (Tex. Crim. App. 2011) (citing *Gollihar v. State*, 46 S.W.3d 243, 254–55 (Tex. Crim. App. 2001)). "[I]f the State unnecessarily chooses between statutory alternatives, it must prove what it ple[ade]d." *Geick*, 349 S.W.3d at 547. Here, the information alleges only that appellant remained in the Nueces County Courthouse after receiving notice to depart but failed to do so. *See* TEX. PENAL CODE ANN. § 30.05(a)(2). Therefore, a hypothetically correct jury charge would instruct the jury to find appellant guilty only if the State proved criminal trespass in this manner. *See Geick*, 349 S.W.3d at 545.

"A 'variance' occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial." *Gollihar*, 46 S.W.3d at 246. "In a variance situation, the State has proven the defendant guilty of a crime, but has proven its commission in a manner that varies from the allegations in the charging instrument." *Id.* Texas courts differentiate material from nonmaterial variances. *Hernandez v. State*, 556 S.W.3d 308, 312 (Tex. Crim. App. 2017). Generally, "[a] variance will be considered material if the variance prejudices the defendant's 'substantial rights.'" *Id.* But the "failure to prove the statutory language" pleaded is "always material" and "renders the evidence legally insufficient to support [a] conviction." *Johnson v. State*, 364 S.W.3d 292, 294–95 (Tex. Crim. App. 2012); *see also Hernandez*, 556 S.W.3d at 313.

7

**B.     Analysis**

There is no question that appellant entered the secured area of the Nueces County Courthouse without consent after being notified by Garza, King, and others that he was forbidden from—and would be arrested for—doing so. *See* TEX. PENAL CODE ANN. § 30.05(a)(1). However, that is not the offense charged in the information. Instead, the State alleged that appellant "enter[ed] and remain[ed] in . . . the Nueces County Court House [sic] . . . after having received notice to depart and fail[ed] to do so." Nothing in the officers' testimony, in the officers' body camera footage, or in any other evidence elsewhere in the record proves that appellant received notice to depart the courthouse. *See id.* § 30.05(a)(2). Indeed, each of the testifying officers admitted that they never asked appellant to leave the courthouse or stated that if appellant failed to do so he would be arrested for criminal trespass.

The State attempted to develop a theory at trial that the relevant "notice to depart" was appellant's being informed to "go[] through the security checkpoint prior to entering the" secured area. But the State provided no authority at trial or on appeal to support its theory that asking appellant to undergo a security check before entering a secured area within the courthouse equates to asking him to depart the courthouse. *See* TEX. R. APP. P. 38.2. And, again, the information does not allege that appellant was asked only to depart a particular area within the courthouse. Instead, it specifies that he failed to depart the courthouse.

In the end, the State pleaded one of two statutory alternatives of criminal trespass that specified the manner and means by which appellant's purported offense was alleged

8

to have transpired but provided no proof of the same. *See Geick*, 349 S.W.3d at 547–48; *Johnson*, 364 S.W.3d at 294–95; *see also Fricks v. State*, No. 13-20-00428-CR, 2022 WL 1669063, at *6 (Tex. App.—Corpus Christi–Edinburg May 26, 2022, no pet.) (mem. op., not designated for publication). Accordingly, the record reflects that there was legally insufficient evidence to prove that appellant remained in the Nueces County Courthouse after being informed to depart. We must therefore enter a judgment of acquittal. *See Herron v. State*, 625 S.W.3d 144, 159 (Tex. Crim. App. 2021); *Byrd v. State*, 336 S.W.3d 242, 258 (Tex. Crim. App. 2011) (entering a judgment of acquittal because there was insufficient evidence to prove the allegations in the indictment); *Cada v. State*, 334 S.W.3d 766, 776 (Tex. Crim. App. 2011) (same).

We sustain appellant's second issue.[3]

### III.   CONCLUSION

We reverse the trial court's judgment and render a judgment of acquittal.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
27th day of July, 2023.

---

[3] Having sustained his second issue, we need not address appellant's first or third issues. *See* TEX. R. APP. P. 47.1, 47.4.